768 A.2d 1201 (2001)
COMMONWEALTH of Pennsylvania, PENNSYLVANIA EMERGENCY MANAGEMENT AGENCY and Charles F. Wynne, Petitioners,
v.
PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.
Commonwealth Court of Pennsylvania.
Argued September 13, 2000.
Decided February 16, 2001.
*1203 Amy L. Johnston, Harrisburg, for petitioners.
James L. Crawford, Harrisburg, for respondent.
Amy L. Rosenberger, Philadelphia, for intervenors, AFSCME and William A. O'Donnell.
Before SMITH, Judge, LEADBETTER, Judge, and RODGERS, Senior Judge.
SMITH, Judge.
The Pennsylvania Emergency Management Agency (PEMA)[1] petitions for review of a final order of the Pennsylvania Labor Relations Board (Board) which held that PEMA had committed an unfair labor practice by denying William O'Donnell union representation during a meeting with his supervisors and ordered, among other things, that PEMA make O'Donnell whole for lost wages and benefits from the date of his discharge until the date of expiration of his position. PEMA contends that the Board erred in granting O'Donnell's petition to intervene and that the Board erred in ordering a make-whole remedy.

I
In April 1998 William O'Donnell was hired by PEMA on a temporary basis as an Auditor 2 in the Bureau of Recovery and Mitigation, a position that would expire on December 31, 1998. His position was included in the A-4 bargaining unit represented by the American Federation of State, County and Municipal Employees, Council 13 (Union). On June 16, 1998, Deborah Johnston, PEMA team leader for western Pennsylvania, called O'Donnell into a meeting in the office of Karen Critchfield, Director of PEMA's Bureau of Recovery and Mitigation. When he arrived in Critchfield's office, O'Donnell found that Richard Schulze, his immediate supervisor, and Rita Breitenbach, PEMA's Personnel Director, were also present. Breitenbach informed O'Donnell that the purpose of the meeting was to discuss his job performance.
Upon learning the purpose of the meeting, O'Donnell requested Union representation, but Breitenbach informed him that he could not have a Union representative present. The meeting then continued. Johnston explained the deficiencies in O'Donnell's work, discussed some recent incidents involving him and questioned him on certain technical aspects of the job. O'Donnell answered the questions and responded with his own version of the events. The managers and supervisors then conducted a private meeting. Upon returning from the private meeting, the managers informed O'Donnell that his employment was terminated. O'Donnell was given a termination letter dated June 16, 1998, which had been prepared prior to the meeting. The letter provided in pertinent part:
On June 16, 1998, a meeting concerning your level of performance was held to afford you an opportunity to hear and discuss your side of the specifics of your unsatisfactory work performance: failure to comprehend and comply with instructions, you require constant supervision, you are uncooperative, you are not an advocate for the applicant, and there are prior incidents of you leaving your work site without permission. These *1204 reasons are the basis of this action and your responses were unsatisfactory.
Board's Final Order, Finding of Fact No. 11, at pp. 1-2. The following day, O'Donnell received a copy of the letter in the mail.
On September 2, 1998, the Union filed a charge of unfair labor practices with the Board alleging, among other things, that PEMA violated Section 1201(a) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.1201(a), by denying O'Donnell Union representation during the meeting. The Secretary of the Board declined to issue a complaint on grounds that the charge alleged by the Union failed to contain facts to support a violation. The Union filed exceptions to the Board, which remanded the matter to the Secretary for further proceedings. The Secretary then issued a complaint and a notice of hearing. The hearing was held on July 12, 1999.
The hearing examiner concluded that PEMA had not committed an unfair labor practice within the meaning of Section 1201(a) of the PERA. Specifically, the hearing examiner determined that PEMA had not violated O'Donnell's right to have a Union representative present during the June 1998 meeting because the meeting was not investigatory. The hearing examiner concluded that PEMA held the meeting solely for the purpose of informing O'Donnell of his termination. Accordingly, the hearing examiner issued a proposed decision and order to dismiss the Union's unfair labor practice charge. The Union elected not to file exceptions. However, on October 13, 1999, O'Donnell filed a petition to intervene along with timely exceptions to the hearing examiner's proposed decision and order.
The Board determined that intervention was proper because O'Donnell was asserting a right that is possessed by the individual employee and therefore he had standing to file the charge on his own behalf.[2] Concerning the merits of O'Donnell's exceptions, the Board found that the meeting had in fact been investigatory. In making this finding the Board relied in part upon the June 1998 termination letter. The Board concluded that O'Donnell had a right to have union representation at the meeting. The Board reversed the decision of the hearing examiner and held that PEMA had committed an unfair labor practice. The Board ordered PEMA to cease and desist from interfering with, restraining or coercing employees in the exercise of their rights under the PERA, to make O'Donnell whole for all lost wages and benefits from the date of his discharge until the expiration of his position, to post a copy of the final order and to furnish the Board with evidence of compliance.[3]

II
PEMA first contends that the Board abused its discretion by granting O'Donnell's *1205 petition to intervene after the hearing examiner issued his proposed decision. In support of its argument, PEMA relies upon 34 Pa.Code § 95.44(c), which provides:
(c) The Board or a member of the Board, or the hearing examiner, as the case may be, may, by orders, permit intervention in person, by counsel, or by other representative to the extent and upon the terms as they may deem proper.
PEMA contends that, because Section 95.44 is found under the heading "Prehearing Provisions" in the Board's regulations, the section does not permit post-hearing intervention. PEMA analogizes Section 95.44(c) to Rule 2327 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 2327. PEMA notes that the Supreme Court has held that under Rule 2327, a petition to intervene after an adjudication is too late. School District of Robinson Township v. Houghton, 387 Pa. 236, 128 A.2d 58 (1956).
PEMA's argument ignores the discretionary nature of the Board's authority to grant intervention. Nothing in the Board's rules prohibits the Board from allowing a party to intervene in a matter after a hearing examiner has entered a proposed order. The intervention in this case is not analogous to the intervention in School District of Robinson Township, because a proposed decision is only a recommendation to the Board and does not constitute a final adjudication. The Board's rules of procedure are to be liberally construed for efficient operation and orderly administration of the acts; the rules may be waived or suspended by the Board at any time and in any proceeding unless the action would deprive a party of substantial rights. 34 Pa.Code § 91.5. Simply put, the Board afforded O'Donnell, as the real party in interest, an opportunity to pursue the unfair practice charge filed by the Union on his behalf. In light of the deference due the Board in interpreting its own regulation, the Board's order cannot be viewed as an abuse of discretion.
PEMA next argues that the Board's finding that the June 1998 meeting was investigatory is not supported by substantial evidence. The Board and this Court have held that a public employee, covered by a collective bargaining agreement, has the right to union representation at an investigatory interview with his or her employer, which the employee reasonably believes may result in the imposition of discipline. American Federation of State, County and Municipal Employees, Council 13, by Keller v. Pennsylvania Labor Relations Board, 100 Pa.Cmwlth. 50, 514 A.2d 255 (1986) (AFSCME, Council 13); Conneaut School District, 12 PPER ¶ 12155 (Final Order, 1981). This principle is commonly referred to as the employee's "Weingarten" rights, because the corresponding federal rule was announced in National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975).
In order for Weingarten rights to attach to the June 1998 meeting, among other things, the meeting must have been an investigatory interview, i.e., the meeting must have been calculated to form the basis for taking disciplinary or other job-affecting actions against O'Donnell because of past misconduct. See AFSCME, Council 13. An employee does not have a right to union representation in a non-investigatory meeting called by the employer to inform the employee of a disciplinary decision that has already been made. Pennsylvania Fish Commission, 18 PPER ¶ 18029 (Final Order, 1986); see also AFSCME, Council 13.
PEMA contends that the June 1998 letter cannot support the Board's finding because the letter was drafted before the meeting and, therefore, cannot be considered as evidence of what actually occurred at the meeting. However, as the Board explained:

*1206 PEMA acknowledges in the letter that the meeting was for the purpose of discussing O'Donnell's work performance, giving him an opportunity to respond and factoring his responses into the employer's decision announced to him following the meeting and the employer's private ten minute recess. One obvious alternative for PEMA following the interview and the private recess session was for the employer not to discharge O'Donnell and withhold the letter if his responses were satisfactory.
Board's Final Order, at p. 5. The record provides ample support for this finding.
PEMA next argues that the Board erred in ordering it to make O'Donnell whole. PEMA contends that the only proper remedy for its violation of O'Donnell's Weingarten rights is for the Board to issue an order directing it to cease and desist from the unfair labor practice. Section 1303 of the PERA, 43 P.S. § 1101.1303, vests the Board with broad remedial power to effectuate the policies of the act. The Court will not interfere with a remedy crafted by the Board so long as the remedy is reasonable, is within the Board's powers and is consistent with prior court decisions. Commonwealth v. Pennsylvania Labor Relations Board, 64 Pa.Cmwlth. 84, 438 A.2d 1061 (1982). The Board concluded that the proper remedy in this situation is a make-whole order consistent with the decision of the National Labor Relations Board (NLRB) in Kraft Foods, Inc., 251 NLRB 598 (1980). Under Kraft Foods, once a Weingarten violation has been established, the burden shifts to the employer to establish that it did not impose the discipline based upon information that it obtained at the unlawful interview. If the employer fails to carry that burden, then a conventional make-whole order will be issued.
The Board recognized that the NLRB overruled Kraft Foods in Taracorp Industries, 273 NLRB 221 (1984), but the Board declined to follow Taracorp.[4] PEMA agrees that the Board is not required to follow NLRB precedent. See American Federation of State, County and Municipal Employees, Council 13 v. Pennsylvania Labor Relations Board, 108 Pa.Cmwlth. 482, 529 A.2d 1188 (1987). However, PEMA contends that the remedy ordered by the Board is inconsistent with the Board's own precedent, and it relies upon the proposed decisions in Pennsylvania State Police, 28 PPER ¶ 28128 (Proposed Decision and Order, 1997), and Lancaster County, 30 PPER ¶ 30075 (Proposed Decision and Order, 1999).
The Board is not bound by proposed decisions, although the Board should not disregard consistent trends in the work of its hearing examiners. See Fraternal Order of Police, Star Lodge No. 20 v. Pennsylvania Labor Relations Board, 104 Pa.Cmwlth. 561, 522 A.2d 697 (1987), aff'd, 522 Pa. 149, 560 A.2d 145 (1989). The Board has not previously addressed in a final order the issue of the proper remedy for an employee discharged as a result of an unlawful interview. The Board was properly cognizant of the proposed decisions in which hearing examiners had reached conclusions contrary to Kraft Foods, but the Board chose not to follow those proposed decisions, as was its prerogative.[5] The remedy fashioned by the Board is not unreasonable, outside of *1207 the Board's powers or inconsistent with prior court decisions, and accordingly the Court will not interfere with it. Commonwealth v. Pennsylvania Labor Relations Board.
Lastly, PEMA argues that the Board applied an improper burden of proof when it concluded that PEMA failed to prove that its decision to discharge O'Donnell was not based upon information obtained at the unlawful interview. PEMA contends that it should have been afforded a new opportunity to meet the Kraft Foods burden. Essentially, PEMA argues that the Board's decision should only be given purely prospective effect. See Blackwell v. State Ethics Commission, 527 Pa. 172, 589 A.2d 1094 (1991) (discussing the effect to be given decisions announcing new rules of law). The Court disagrees. Requiring the Board to give a decision purely prospective effect every time it creates a new rule of law to remedy an unfair labor practice would be inconsistent with the broad discretion afforded to the Board in crafting remedies under the PERA. Moreover, the June 1998 termination letter clearly advises O'Donnell that he was discharged in part because his responses at the meeting were unsatisfactory. A remand would only place PEMA in the untenable position of having to discredit its own letter. Accordingly, the Board's order is affirmed.

ORDER
AND NOW, this 16th day of February, 2001, the final order of the Pennsylvania Labor Relations Board is hereby affirmed.
NOTES
[1] Charles F. Wynne was the Director of PEMA during the relevant time period.
[2] The Board concluded that O'Donnell had standing to assert the unfair labor practices charge because it is premised upon Section 1201(a)(1) of the PERA, and the right to have a union representative present at an investigatory meeting is possessed by individual employees as well by the bargaining unit. PEMA would not have objected to prehearing intervention by O'Donnell.
[3] This Court's review of the Board's final order is limited to determining whether the necessary findings of fact are supported by substantial evidence of record and whether a constitutional violation or error of law was committed. City of Harrisburg v. Pennsylvania Labor Relations Board, 146 Pa.Cmwlth. 242, 605 A.2d 440 (1992). The Court will defer to the Board's interpretations of its own statute against competing interpretations so long as its interpretations are reasonable. See, e.g., Crawford County v. Pennsylvania Labor Relations Board, 659 A.2d 1078 (Pa. Cmwlth.1995). Furthermore, an agency interpretation construing one of its own regulations is controlling unless the interpretation is clearly erroneous, the interpretation is inconsistent with the regulation or the regulation itself is inconsistent with the underlying legislative scheme. Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises, Inc., 669 A.2d 1018 (Pa.Cmwlth. 1995).
[4] Under the rule enunciated in Taracorp, a make-whole remedy is appropriate only when the employee was disciplined solely because the employee attempted to assert Weingarten rights.
[5] Neither of the proposed orders cited by PEMA involved an employee who was discharged following an unlawful interview. The Court notes however that, in a 1983 case involving the discharge of an employee, a hearing examiner applied the rule of law later announced in Taracorp. See SEPTA, 14 PPER ¶ 14047 (Proposed Decision and Order, 1983) (refusing to order reinstatement as a remedy for a Weingarten violation where the union did not allege that the discharge was not for just cause or not supported by other evidence).