### DURYEA BOROUGH POLICE DEPARTMENT, Petitioner

v.

### PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2004.
Decided Oct. 14, 2004.

---

Sean T. Welby, Harrisburg, for petitioner.

Scott E. Blissman, Philadelphia, for intervenor, Duryea Borough.

Before: SMITH–RIBNER, SIMPSON, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Duryea Borough Police Department[1] (Union) seeks review of the order of the Pennsylvania Labor Relations Board (Board) sustaining the exceptions of Duryea Borough (Borough) to the Hearing Examiner's proposed decision and order (PDO) and modifying the portion of the PDO that directed the Borough to reinstate Charles J. Guarnieri (Police Chief) to the position of Chief of Police. We affirm.

At the end of 2001, there was a deficit in the Borough's police department budget. Beginning in the spring of 2002, members of the Duryea Borough Council began to question the manner in which the Police Chief administered the budget. Throughout 2002, Borough Council members made several unsuccessful attempts to elicit information from and set up meetings with the Police Chief regarding the matter.

On January 10, 2003, the Police Chief attended a mandatory meeting (investigatory interview) with the Borough's Mayor, Solicitor and Council President. During the investigatory interview, it was established that disciplinary action could result. The Solicitor denied the Police Chief's request for legal representation but agreed that he was entitled to union representation during the interview. However, the appropriate union representative was not available to attend and the investigatory interview continued for not more than 15 minutes. The investigatory interview ultimately ended when the Solicitor informed the Police Chief that a disciplinary hearing would be scheduled. Subsequently, the Borough Council convened a formal hearing and thereafter terminated the Police Chief for inefficiency in handling the budget and insubordination. (R.R. 114a)

On February 20, 2003, the Union filed with the Board an unfair labor practice charge alleging that the Borough violated Sections 6(1)(a) and 6(1)(c) of the Pennsylvania Labor Relations Act (PLRA)[2] and

---

1. Duryea Borough Police Department is the exclusive, recognized bargaining agent for the unit consisting of all Duryea Borough police officers, including the office of Chief of Police.

2. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a) and (c), provide in relevant part:
   (1) It shall be an unfair labor practice for an employer-

   (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
   . . . .
   (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization.

the law commonly referred to as Act 111.[3] The Board issued a complaint and an administrative hearing was held.

Thereafter, the Hearing Examiner made the following findings of fact relevant to the investigatory interview: (1) during the investigatory interview, the Solicitor informed the Police Chief that his conduct was insubordinate and (2), the Borough Council President believed some of the Police Chief's responses during the investigatory interview were insubordinate. (F.F. 28, 29; R.R. 262a) Based on these two findings, the Hearing Examiner inferred that the Borough used information obtained from the investigatory interview to terminate the Police Chief for insubordination. The Hearing Examiner concluded, therefore, that the Borough's actions during the investigatory interview constituted a violation of the Police Chief's right to union representation under Section 6(1)(a) of the PLRA and ordered "make-whole" relief in the form of reinstatement.

The Hearing Examiner also determined that, although the Union established a *prima facie* case of anti-union discrimination under Section 6(1)(c) of the PLRA, the Borough countered with sufficient evidence to prove that the Police Chief was terminated for non-discriminatory reasons. To support this conclusion, the Hearing Examiner credited evidence indicating that the Police Chief: (1) physically threatened and accosted a Borough Councilman, (2) failed to provide information requested by Borough Council regarding his job description and (3), submitted inaccurate and misleading information to Borough Council. (F.F. 34–38; R.R. 262a–263a) Accordingly, the Hearing Examiner dismissed the discrimination charge under Section 6(1)(c) of the PLRA.

The Borough timely filed exceptions, alleging that the evidence established a basis for the termination independent of the investigatory interview and that, therefore, the Hearing Examiner erred in ordering reinstatement. In its Final Order issued March 16, 2004, the Board sustained the Borough's objections and issued a cease and desist order. The Board also vacated the Hearing Examiner's reinstatement award on the basis that the Borough had independent, alternative reasons for the termination unrelated to the investigatory interview.

On appeal, the Union argues that the Board erred in concluding that there was no connection between the investigatory interview and the Police Chief's subsequent termination for insubordination and that the Board committed an abuse of discretion when it modified the Hearing Examiner's reinstatement award to a cease and desist order. Our review of a final order of the Board is limited to determining whether there has been a constitutional violation, an error of law, or whether findings of fact are supported by substantial evidence of record. *City of Reading v. Pennsylvania Labor Relations Board,* 689 A.2d 990 (Pa.Cmwlth.1997).

Section 6(1)(a) of the PLRA protects an employee's right to union representation at an investigatory interview conducted by the employer where the employee reasonably fears discipline. *Pennsylvania Emergency Mgmt. Agency v. Pennsylvania Labor Relations Board,* 768 A.2d 1201 (Pa.Cmwlth.2001) (*PEMA*). This protection is commonly referred to as an employee's *Weingarten* right, in recognition of the United States Supreme Court decision in *National Labor Relations Board v. J. Weingarten, Inc.,* 420 U.S. 251,

---

3. Act of June 24, 1968, P.L. 237, *as amended,*     43 P.S. §§ 217.1–217.10.

95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *PEMA.*

In *PEMA*, the Board employed a shifting burden analysis to determine whether "make-whole" relief is warranted to remedy *Weingarten* violations. After a *Weingarten* violation is established, the employer is required to show that it did not impose the disciplinary action in question based on information obtained at the improper investigatory interview. *Id.* Because the employer in *PEMA* failed to meet this burden, the Board issued a conventional "make-whole" remedy in the form of reinstatement. *Id.* On appeal, we affirmed the Board's authority to require "make-whole" relief for *Weingarten* violations. *Id.*

Section 6(1)(c) of the PLRA prohibits an employer from taking adverse employment action motivated by discriminatory anti-union animus. *St. Joseph's Hosp. v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977). In order to establish a violation, the complaining party must prove that the affected employee was engaged in protected activity, that the employer was aware of the activity and that the employer's adverse action was motivated by anti-union animus. *Id.* An employer may rebut a claim of discrimination under Section 6(1)(c) of the PLRA by proving that the adverse employment action was based on valid non-discriminatory reasons. *Id.*

There is no dispute that a *Weingarten* violation occurred in this case. The Union contends, however, that the Board erred in discounting the Hearing Examiner's credibility determinations regarding the testimony of the Solicitor and Borough Council President that purportedly connected the Borough's termination decision to the improper investigatory interview. As such, the Union argues that the Board's rejection of these credibility determinations is

arbitrary because it contradicts the Board's stated policy of deferral. *Pennsylvania Fish Comm'n,* 18 Pa. Pub. Employ. R. 18029 (Final Order, 1986) (absent compelling circumstances, the Board will not disturb the hearing examiner's credibility determinations which would indicate a contrary result).

■ We disagree. It is the Board's function to appraise conflicting evidence, determine credibility matters, and draw inferences from the facts and circumstances. *City of Reading.* Moreover, the Board is not bound by PDOs. *PEMA.* In the case *sub judice,* the record does not indicate that the Board altered or rejected any of the Hearing Examiner's fact-findings or that it reassessed witness credibility. Instead, the record reveals that the Board adopted the Hearing Examiner's findings that the Police Chief physically threatened and accosted a Borough Councilman, failed to provide information requested by Borough Council regarding his job description, and submitted inaccurate and misleading information to Borough Council. These facts are sufficient to support the Board's legal conclusion that the Borough met its burden set forth under *PEMA.*

■ In addition, we reject the Union's contention that the Board failed to properly apply the Borough's burden of proof under *PEMA.* In order to avoid a mandatory "make-whole" award, the Borough was required to submit evidence that its decision to terminate the Police Chief was based on factors independent from those encountered during the improper investigatory interview. As the Board noted in its Final Order, the record indicates that the identical facts relied on by the Hearing Examiner to support a finding that the Borough did not violate Section 6(1)(c) of the PLRA are sufficient to support a finding that the Borough met its *PEMA* bur-

den by proving that it terminated the Police Chief for instances of insubordination independent of his conduct at the investigatory hearing. Because the facts support the Borough's position under Sections 6(1)(a) and 6(1)(c) of the PLRA, the Board was free to exercise its discretion in creating the appropriate remedy. *PEMA*.

■ Our decision in *PEMA* does not mandate that the Board order "make-whole" relief as a remedy for every termination occurring subsequent to a *Weingarten* violation. Rather, it represents our obligation to defer to the Board's discretion in fashioning a reasonable remedy for a *Weingarten* violation where, as here, the evidence is legally sufficient to support a finding that the employer did not rely on information obtained by virtue of the improper investigatory interview to impose discipline.

The Board possesses broad administrative discretion to fashion remedies for *Weingarten* violations, and we will not overturn a remedy ordered by the Board absent proof that it acted outside of its delegated authority, that the remedy is unreasonable, or that the remedy conflicts with prior case law. *Id.* We therefore conclude that the Board's modification of the Hearing Examiner's reinstatement award to a cease and desist order constituted an appropriate exercise of its authority to issue remedies for unfair labor practices. Accordingly, we affirm the Board's order.

### *ORDER*

AND NOW, this 14th day of October, 2004, the March 16, 2004 order of the Pennsylvania Labor Relations Board is hereby AFFIRMED.