**PENNSYLVANIA STATE TROOPERS ASSOCIATION, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 13, 2013.

Decided July 2, 2013.

Sean T. Welby, Harrisburg, for petitioner.

Keith A. Herbster, Harrisburg, for intervenor Pennsylvania State Police.

Warren R. Mowery, Jr., Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge McGINLEY.

■ The Pennsylvania State Troopers Association (PSTA) petitions for review of a final order of the Pennsylvania Labor Relations Board (PLRB) which held that the Pennsylvania State Police (PSP) did not violate Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act[1] (PLRA) and Act 111[2] when it deprived Corporal Edmund Fret (Corporal Fret) of Weingarten[3] representation during an Internal Affairs Division (IAD) interview on July 22, 2009.

In July 2009, the IAD was investigating allegations of misbehavior against a PSP member. As part of that investigation, Sergeant Jeffrey Balut (Sergeant Balut), an official serving on the Bureau of Integrity and Professional Affairs, IAD, was assigned to conduct "witness" interviews of Trooper Jeffrey Winters (Trooper Winters) and Corporal Fret. Neither Corporal Fret nor Trooper Winters was the subject of the underlying investigation.[4]

The interviews were prescheduled. Trooper Winters' interview was scheduled for Wednesday, July 22, 2009. Corporal Fret's interview was scheduled for Friday, July 24, 2009. Each made arrangements with PSTA to have union representation for their respective interviews.

Prior to the interviews, Sergeant Balut was advised by his Lieutenant that neither Trooper Winters nor Corporal Fret were to be afforded union representation "per the Chief Counsel's Office."

On Wednesday, July 22, 2009, Sergeant Balut interviewed Trooper Winters. Also present was Corporal Scott Walck (Corporal Walck), a member of the PSP who appeared at *Weingarten* interviews on behalf of bargaining unit members as a union representative.

Trooper Winters told Sergeant Balut that he wanted representation because he was concerned that there may "be an allegation that what he would say in the interview would have been a lie, and that they would possibly BPR [Bureau of Professional Responsibility] him for it." Notes of Testimony, August 29, 2011 (N.T.), at 23; R.R. at 38a. According to Trooper Winters, he was approached by a civilian

---

**1.** Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6.

**2.** Act of June 24, 1968, P.L. 237, No. 111, *as amended,* 43 P.S. § 217.1.

**3.** Under *National Labor Relations Board v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), public employees have the right to be accompanied by a union representative during an interview where the em-

ployee reasonably fears that discipline may be imposed by the employer. This right of accompaniment is now commonly known as an employee's *Weingarten* right.

**4.** Apparently both were present during a conversation in which another Trooper referred to a female Trooper as a "liar." Transcript of Interview, July 22, 2009, at 124–125; Reproduced Record (R.R.) at 187a–188a.

employee who told him "if you don't say what I think you should say, there's going to be problems, you might get an IA [Internal Affairs] filed against you." N.T. at 54; R.R. at 69a. Trooper Winters was concerned that he "would be the subject of an IAD investigation depending on what he said in the interview." N.T. at 25; R.R. at 40a.

Sergeant Balut telephoned his Lieutenant who agreed that Trooper Winters could have a union representative at the interview.

At the conclusion of Trooper Winters' interview, Sergeant Balut informed Corporal Walck that he wished to interview Corporal Fret next, and that Corporal Fret would not be afforded union representation. N.T. at 16; R.R. at 31a.

Corporal Walck accompanied Sergeant Balut to Archibald, Pennsylvania, where Corporal Fret was conducting school bus inspections. Corporal Fret stated that he had prescheduled his interview for that upcoming Friday and he had arranged for union representation to be present then. Sergeant Balut advised Corporal Fret that while he was the "subject of the interview" he was not the "subject of the investigation." Therefore, he was not entitled to representation. Corporal Fret responded, "Well, I still want to protect myself; I want an FOP [Fraternal Order of Police] rep." N.T. at 32; R.R. at 47a.

At that point, Sergeant Balut placed a call to his Lieutenant while Corporal Fret called the PSTA.

After both finished their respective calls, Sergeant Balut summoned Corporal Walck. Then with all three men in the car, Sergeant Balut read Corporal Fret his

Pennsylvania State Police Administrative Warnings:

**This questioning concerns administrative matters relating to the official business of the Pennsylvania State Police. I am not questioning you for the purpose of instituting criminal prosecution against you, or for the purpose of securing additional evidence against you in any pending criminal action. During the course of this questioning, even if you disclose information which indicates that you may be guilty of criminal conduct concerning this allegation, neither your self-incriminating statement, nor its fruits will be used against you in a criminal proceeding.**

**Since this is an administrative matter within the Pennsylvania State Police, you are required to answer questions truthfully and completely or you may be subjected to administrative action. You do have the right to have a union representative with you during such questioning. If, during the course of this interview, you have reason to believe that your statements could result in administrative action being initiated against you, union representation will be provided upon request.**

Administrative Warnings at 1; R.R. at 141a. (emphasis in original).

Based on his reading of the second paragraph, Corporal Fret believed that he was entitled to have a union representative present during the interview. He asked if Corporal Walck could be his FOP representative. Sergeant Balut said "[w]ell, you're not the subject of the investigation." N.T. at 33; R.R. at 48a. Corporal Fret said "[w]ell, you gave me the *Garrity* [5]

---

5. "Garrity warnings" refer to the warnings given to police officers who are the subject of an internal investigation that their answers will not be used in any criminal prosecution, while also warning the subject of the investigation that the refusal to answer questions may be grounds for termination. *Garrity v.*

warnings ... am I going to get disciplined if I say something that comes out" to which Sergeant Balut replied: "I don't know, but if you do you could grieve it at a later time." N.T. at 33; R.R. at 48a.

Both Corporal Fret and Corporal Walck were told to sign the Administrative Warnings. Corporal Fret checked "Yes" next to the question "Do you have any questions concerning what I have just explained to you." N.T. at 34; R.R. at 49a. Corporal Fret explained why he was confused:

> A. Because they're telling me that I'm not the subject of the investigation, however they gave me my administrative warnings, which, in my mind, they're telling me now that, you are the subject of the investigation. And it says right here in the administrative warning that I have the right to an FOP rep, which I had one scheduled for Friday to come, and I had an FOP rep with me right there in the car, who was being allowed to listen to the administrative warning, but he wasn't being allowed to sit in the vehicle during questioning for me.[6] So that's when again I asked Sgt. Balut, 'Could I be disciplined?' And he couldn't give me a straight answer.

N.T. at 35; R.R. at 50a.

On August 6, 2009, the PSTA filed a charge of Unfair Labor Practices and argued that the PSP violated Section 6(1) of the PLRA, 43 P.S. § 211.6, when it refused Corporal Fret's request for *Weingarten* representation during his investigatory interview on July 22, 2009. The Secretary of the Pennsylvania Labor Re-

lations Board (Board) issued a Complaint. On April 10, 2012, the Hearing Examiner issued a Proposed Decision and Order which recommended dismissal of the charge of Unfair Labor Practices and rescission of the Complaint.

The PSTA filed Exceptions to the Proposed Decision and Order, and the matter was submitted to the Board. By Final Order dated July 17, 2012, the Board affirmed and made final the Proposed Decision and Order. The Board held that Corporal Fret was not subjected to an "investigative interview" so he was not entitled to *Weingarten* representation.

The PSTA petitions for review[7] from that order. It contends that the Board erred as a matter of law when it concluded that the PSP did not commit an unfair labor practice.

In *Weingarten* the United States Supreme Court determined that employees have a right to union representation in an "investigatory interview" where the employee "reasonably believes the investigation may result in disciplinary action" and where that right does not interfere with the employer's legitimate prerogative to continue his investigation without interviewing the employee. In order to exercise that right, the employee must request union representation. *Weingarten,* 420 U.S. at 256–260, 95 S.Ct. 959.

In *Pennsylvania Emergency Management Agency v. Pennsylvania Labor Relations Board,* 768 A.2d 1201 (Pa.Cmwlth. 2001), this Court reviewed the Board's

---

*New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

**6.** Sergeant Balut ordered Corporal Walck out of the vehicle and proceeded to question Corporal Fret.

**7.** This Court's scope of review is limited to whether the decision of an agency violated the petitioner's constitutional rights, is not in accordance with the law, or that any finding of fact made by the Board is unsupported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

decision to deny William O'Donnell (O'Donnell), an employee of Pennsylvania Emergency Management Agency (PEMA), union representation during a meeting with his supervisors to discuss his job performance.

In that case, O'Donnell had been called to a meeting with PEMA supervisors and managers. His request for union representation was denied. O'Donnell was questioned about deficiencies in his work, recent incidents, and certain technical aspects of his job. The managers and supervisors then conducted a private meeting. Shortly thereafter O'Donnell was fired. The union filed a charge of unfair labor practice and alleged, among other things, that O'Donnell was denied union representation during the meeting. The Board held that PEMA committed an unfair labor practice because the meeting was "investigatory." PEMA appealed and argued that the Board's finding that the meeting was "investigatory" was not supported by substantial evidence. *Pennsylvania Emergency Management Agency*, 768 A.2d at 1204.

On appeal, this Court affirmed the Board. It noted that "in order for *Weingarten* rights to attach ... the meeting must have been [an] investigatory interview, i.e., the meeting must have been calculated to form the basis for taking disciplinary or other job affecting actions against O'Donnell." *Pennsylvania Emergency Management Agency*, 768 A.2d at 1205. Because the meeting formed, in part, the basis for the termination, it was investigatory.

■ Here, relying on *Pennsylvania Emergency Management Agency*, the Board found that the interview was not "investigatory" because Corporal Fret was

not a "subject of the investigation," but only a "witness." However, this Court finds the circumstances presented clearly precluded the designation of the interviewee as a "witness" as opposed to a "subject" of the investigation.

First, although he was told he was not the "subject of the investigation" Corporal Fret was given written Administrative Warnings which advised him that he was being subjected to questioning under pain of losing his employment and, further, that he had the right to union representation upon request.

Corporal Fret was familiar with the Administrative Regulations (AR), particularly AR 4–25, which required the IAP investigator to read the Administrative Warnings to *the subject of the investigation*. N.T. at 46–47; R.R. at 61a–62a. (emphasis added). Corporal Fret understood "that when you're the subject of the investigation, they are required to give you the administrative warnings .... So when he gave me my administrative warning, in my mind, at that point in time I became not just a witness; I became a possible subject of this investigation." N.T. at 42; R.R. at 57a. He explained: "I know that when you [are given] a *Garrity* that you should have a union rep, so that's what I was basing it on." N.T. at 49; R.R. at 64a.

It may well be that in their minds, the Lieutenant and other IAD officials who made the decision to deny *Weingarten* representation[8] did not consider the investigation to be "investigatory" in nature because the underlying investigation concerned misconduct committed by another employee. However, the inquiry was not focused on the "label" given to the questioning by the employer, but rather, the focus must be on whether the employee

---

8. Actually, Sergeant Balut, the IAD investigator, even testified that he believed Corporal Fret's request for representation was "justifiable." N.T. at 56; R.R. at 71a.

reasonably believed an adverse impact could occur as the result of the meeting. *Reading v. Pennsylvania Labor Relations Board,* 689 A.2d 990 (Pa.Cmwlth.1997).

The information communicated to Corporal Fret was conflicted. On the one hand, Corporal Fret was told he was not the subject of any investigation. On the other hand, he was given the Administrative Warnings and was advised he had the right to union representation if he reasonably believed his statements could result in an administrative action.

Based on the circumstances, this Court finds there was sufficient and persuasive evidence that Corporal Fret reasonably believed the interview had the potential to result in discipline against him. Clearly, there was a confrontation because a tape-recorded interview took place. After he was given the Administrative Warnings, Corporal Fret understood that he became a subject of the investigation and reasonably feared being disciplined. Corporal Fret was never assured that he would not be subject to discipline as a result of what he said during the interview. Corporal

Fret was told he had the right to representation, and then inexplicably deprived of that representation. Once he was given the Administrative Warnings, he was entitled to *Weingarten* representation.

This Court must conclude that the Board erred when it found that the Commonwealth did not commit an unfair labor practice when it denied Corporal Fret union representation during his interview on July 22, 2009.

For the reasons stated above, the order of the Board is reversed.

## ORDER

AND NOW, this 2nd day of July, 2013, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby reversed.