William **MERRELL**

v.

**CHARTIERS VALLEY SCHOOL DISTRICT, Bernard A. Sulkowski, Michael L. Bonacci, Thomas Helbig, Michael Dempster, Jeff Choura, John Franjione, Patricia Frey, Bridget Kelly, Kathleen Lewis, Beth McIntrye, Mary Lou Petronsky, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided Aug. 29, 2012.

---

Falco A. Muscante, Pittsburgh, for appellants.

Jean E. Novak, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEADBETTER.

The Chartiers Valley School District (School District) appeals from the judgment entered by the Court of Common Pleas of Allegheny County in favor of William Merrell (Merrell) and against the School District after a non-jury trial. The court found that the School District violated Section 7104(a) of the Act, commonly known as the Veterans' Preference Act, 51 Pa.C.S. § 7104(a), by failing to give Merrell veteran's preference in processing his application for a teacher position. The court ordered the School District to place Merrell in a teacher position and to make him whole for lost wages and benefits. The School District argues that Merrell was not entitled to veteran's preference because he was not qualified for the position. It further argues that Merrell failed to establish that its hiring process was flawed and antagonistic to the precepts of the Act. The School District also challenges the court's award of damages to Merrell. After careful review of the record and relevant case law, we affirm.

## I.

In July 1999, Merrell commenced the instant action by filing a complaint in equity against the School District and its officials. In the amended complaint, Merrell alleged that he was a veteran of the United States Air Force and applied for a full-time high school social studies teacher position with the School District in 1997 and 1999. He averred that he was qualified for the position but was not hired due to the School District's failure to give him the veteran's preference mandated by the Act. Section 7104(a) of the Act provides that "[w]henever any soldier [1] possesses *the requisite qualifications and is eligible to appointment to or promotion in a public position*, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position *shall give preference* to such soldier." (Emphasis added.) [2] Merrell asked the trial court to order the School District to hire him as a social studies teacher as of the 1997–1998 school year and to pay him backpay and lost benefits.

The trial court sustained the School District's preliminary objections and dismissed the action as untimely. The court concluded that the School District's April 28, 1999 letter informing him of its decision to hire another applicant was an adjudication from which an appeal should have been filed within 30 days. This Court reversed the dismissal on the basis that the trial court should have permitted Merrell to file an appeal *nunc pro tunc*. In *Merrell v. Chartiers Valley School District*, 579 Pa. 97, 855 A.2d 713 (2004), the Pennsylvania Supreme Court affirmed this Court's decision on different grounds.

---

1. A "soldier" is defined as "a person who ... served or hereafter serves in the armed forces of the United States ... and who has an honorable discharge from such service." Section 7101 of the Act, *as amended*, 51 Pa. C.S. § 7101.

2. Unlike Section 7103 of the Act, 51 Pa.C.S. § 7103, granting certain additional points to a veteran who applies for a civil service position, Section 7104(a) of the Act does not specify the nature or degree of preference for a veteran applying for a non-civil service position.

The Court determined that the School District's April 28 letter was not an adjudication subject to the 30–day appeal period. The Court classified veterans' preferences as "supplemental point preferences and tie-breaking preferences," as opposed to "absolute preferences." *Id.* at 108, 855 A.2d at 719. The Court stated: "Public employers are not required to hire preference eligible veterans if they do not believe the candidate is qualified or possesses the requisite experience. Without an absolute preference in employment, Merrell does not have a property right to preference in employment such as to render the letter of April 28th an adjudication." *Id.* at 110, 855 A.2d at 720–21 (footnote omitted).

In support, the *Merrell* Court relied on *Brickhouse v. Spring–Ford Area School District,* 540 Pa. 176, 183–84, 656 A.2d 483, 486–87 (1995), which held:

> Veterans who seek to take advantage of the act must be able to accomplish "proper performance of public duties." That is, a veteran seeking to take advantage of the preference mandated by the act must be able to demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer....
>
> ....
>
> We are mindful that a public employer might be able to formulate qualifications for a job in such a way as to defeat the veterans' preference required by the act. When such formulations are undertaken in bad faith without regard to legitimate need, they must fail, but determination of the legitimacy of the employer's formulation of hiring criteria can be done only on a case by case basis.

The *Merrell* Court stated that no determination had been made by the trial court in the preliminary objections stage as to whether Merrell possessed the appropriate qualifications or that the School District attempted to circumvent the Act. The Court observed, however: "It appears that Merrell was able to advance only to level four of the five-step hiring process. He was not among, as nearly as we can determine from the scant record before this Court, the final applicants under consideration." *Merrell,* 579 Pa. at 110, 855 A.2d at 721. The Court further noted: "In the instant matter, the preference had not yet ripened because Merrell did not succeed in reaching the final level of consideration. The applicants remaining after the close of the fourth stage, the point at which Merrell was removed from consideration, were those considered qualified for the open teaching position." *Id.* at 112, 855 A.2d. at 721–22. The Court accordingly remanded the matter to the trial court to give Merrell "the opportunity to demonstrate his qualifications and, if he is able, show that there was a flaw in the process that precluded the ripening of his interest [by reaching the final step of being selected as one of three applicants referred to the School Board], antagonistic to precepts of the Veterans Preference Act." *Id.* at 112, 855 A.2d at 722.

## II.

On remand, the parties agreed to bifurcate the case and hold separate bench trials on liability and damages.[3] At a bench trial held on liability in April 2010, the following evidence was presented. In 1996, the School District adopted an inter-

---

3. By stipulation of the parties, the School District's officials were dismissed from the case. This Court quashed the School District's appeal from the trial court's order overruling the School District's amended preliminary objections filed on remand raising governmental and official immunity. *See Merrell v. Chartiers Valley Sch. Dist.,* 579 Pa. 97, 855 A.2d 713 (2006).

view process developed by Development Dimension International (DDI), an industrial personnel firm located in the School District, which utilizes final selection criteria, known as a targeted selection, and a rating system, known as STAR (Situation, Task, Action and Result). Two trained interviewers fill out questionnaire sheets on twelve qualities that a good teacher must possess, which were formulated by DDI based on information obtained from the School District's teachers and administrators.[4] The interviewers also rate applicants' qualities on the following scale:

> 5—Much more than acceptable (Significantly exceeds criteria for successful job performance)
>
> 4—More than acceptable (Exceeds criteria for successful job performance)
>
> 3—Acceptable (Meets criteria for successful job performance)
>
> 2—Less than acceptable (Generally does not meet criteria for successful job performance)
>
> 1—Much less than acceptable (Significantly below criteria for successful job performance)
>
> Clarifying ratings:
>
> N—No opportunity to observe or assess
>
> W—Weak/Want more data (for example, 4W)
>
> 5H—Too high

Reproduced Record (R.R.) at 683a.

The School District's hiring process begins with review of written applications. All applicants eligible for a position are given a telephone interview. Those receiving a rating of 3 or higher in the telephone interview move to face-to-face targeted selection interviews by two interviewers. After interviews, the two interviewers meet to discuss their ratings given to each applicant and arrive at a consensus rating on each of the twelve qualities and an overall consensus rating. Three candidates with highest ratings per available position are referred to the School Board after the high school principal ranks them.[5] The former high school principal, Michael Bonacci, testified that in ranking the three selected applicants in 1997, he considered what "they can bring more than just teaching," such as an ability to coach sports teams. Notes of Testimony (N.T.) at 606; R.R. at 1183a.

Merrell retired from the United States Air Force in 1995 with the rank of senior master sergeant after serving for more than twenty years. He holds a B.A. degree in legal studies from the University of Pittsburgh, a M.A. degree in geography and regional planning from the California University of Pennsylvania, a M.A. degree in secondary education from Duquesne University, and a Pennsylvania teaching certificate for social studies from Duquesne University. He was a participant in the "Troops to Teachers" program administered by the United States Department of Defense, under which the Department pays a school district hiring a veteran 50% of his or her basic salary up to $25,000 in the first year, which is gradually reduced to 10% of basic salary up to $2500 in the fifth year. R.R. at 74a.

---

4. The twelve qualities consist of student coaching, teamwork, monitoring, parent relations, planning and organizing, oral communication, problem analysis, innovation, decision making, professional knowledge/subject area, work standards, and job fit and motivation. Reproduced Record at 486a.

5. Section 2110(b) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 21–2110(b), provides that "no person shall be appointed ... to any educational position in the public school system ... whose name does not appear among the three highest names upon the proper eligible list."

In 1997, Merrell applied for an advertised social studies teacher position with the School District. Merrell received a rating of 3+ on the telephone interview and moved to targeted selection interviews with three other non-veteran applicants, Christopher Schall, Cynthia Selai and Matt DeBoer, who was the School District's student teacher. Merrell received a consensus rating of 4W in the targeted selection interviews. The three other applicants received a rating of 4 and were referred to the School Board. The School Board hired DeBoer and approved Merrell for a substitute teacher position. In 1999, Merrell again applied for one of three available social studies teacher positions with the School District and received a consensus rating of 3 in targeted selection interviews and was not referred to the School Board. He was again approved for a substitute teacher position.

DeBoer, hired by the School Board in 1997, was the captain of his high school football team and participated in a national championship game. He graduated from Washington and Jefferson College in 1993 with a B.A. degree in business administration with a rank of 228 in the class of 302 students and thereafter worked in the medical and surgical supply sales industry until February 1995. He then took courses required for a teaching certificate at the Washington and Jefferson College and became the School District's student teacher in February 1996. He applied for a social studies teacher position with the School District in May 1996 after receiving a teaching certificate. He received an average targeted selection interview rating of 2.5 in the twelve quality categories with a consensus overall rating of 3W and was not hired. He again applied for a social studies teacher position in 1997 and received ratings of 5 on student coaching, job fit and motivation, and oral communication with an overall consensus rating of 4.2.

The trial court first noted that the School District did not set forth any specific qualifications for a social studies teacher and that "the DDI Formula was merely a stylized method to interview applicants" and included "no objective educational standards." Trial Court's August 11, 2011 Opinion at 8 and September 3, 2010 Opinion at 11. The court determined that Merrell was qualified for the position, that the School District failed to give him veteran's preference mandated by the Act, and that the hiring process was antagonistic to the Act. The court ordered the School District to place him in a social studies teacher position as of July 1997 and to make him whole for lost wages, benefits and emoluments. Due to its decision, the court found it unnecessary to review the 1999 hiring process.

The trial court thereafter held a bench trial on damages. The evidence showed that Merrell had worked as a safety professional for private employers since 1997, earning each year more than he would have earned as a School District teacher, except in 2004. The parties stipulated that Merrell earned $16,250.10 in 2004 but would have earned $42,040 as a School District teacher at a master's degree level in that year. The evidence also showed that Merrell incurred out-of-pocket costs of $5785.60 to obtain health, dental and vision care and life insurance coverage. Merrell was receiving workers' compensation benefits for an injury sustained while employed by Weekes Marine from 2007 to 2009. He applied for social security disability benefits, as required by the employer's insurance carrier. Merrell testified that although he was receiving disability benefits, he was still able to perform the duties of a teacher. The School District urged the trial court to adopt "the total offset method" of calculating damages. Under that method, Merrell's total earn-

ings since 1997 exceeding the amount of what he would have earned as a teacher during that period would be set off against his wage loss in 2004, which would result in no backpay award.

■ The trial court rejected the total offset method and instead utilized a year-by-year method, which resulted in Merrell's wage loss of $25,789.10 (the teacher's salary of $42,040 in 2004, calculated at a master's degree level, minus $16,250.10 he earned in 2004). The court ordered the School District to pay Merrell backpay of $25,789 plus interest beginning 2005, to reimburse his out-of-pocket expenses of $5785.60 paid for fringe benefits, to enroll him in the Public School Employee Retirement System (PSERS) as of July 1997 and to pay PSERS its share of contribution. The court also ordered Merrell to pay PSERS his share of contribution. The court denied Merrell's request for an award of attorney's fees and refused to keep the record open to permit the School District to present additional evidence related to Merrell's receipt of disability benefit. The School District filed a motion for post-trial relief, seeking reconsideration and/or modification of the court's orders, or a new trial. After argument on the motion and prior to the court's ruling, Merrell filed a praecipe for entry of judgment.[6] The School District appealed the judgment. The trial court subsequently entered an order denying the motion for post-trial relief.[7]

## III.

■ The School District first argues that the trial court abused its discretion and committed an error of law in concluding that Merrell was entitled to veteran's preference. The School District maintains that it had the obligation to hire the most qualified teachers and the authority to exercise its discretion in deciding which applicants were most qualified. The School District submits that Merrell was not a qualified applicant entitled to veteran's preference because he was not one of the final three applicants in 1997 and was not one of the nine highest rated candidates in 1999. The School District insists that there was no flaw in its hiring process and that the interviewers did not act in bad faith.

■ In a bench trial, the trial judge acts as fact-finder and has the authority to make credibility determinations and to resolve conflicts in evidence. *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880 (Pa.Super.2006). Consequently, the trial judge's findings made after a bench trial must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581 (Pa.Super.2009). Accordingly, the trial court's authority to grant or deny a post-trial motion following a bench trial "is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished." *Spang & Co. v. United States*

---

**6.** Rule 227.4(1)(b) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 227.4(1)(b), requires a prothonotary to enter judgment upon a party's praecipe when the court does not enter an order disposing of all of post-trial motions within 120 days after the filing of the first motion.

**7.** This Court's review of the trial court's denial of a post-trial motion is limited to deter-

mining whether the court's findings are supported by competent evidence and whether the court committed an error in application of the law. *Borough of Ulysses v. Mesler*, 986 A.2d 224 (Pa.Cmwlth.2009). In conducting review, we must consider the evidence in a light most favorable to the verdict winner, Merrell in this case. *Id.*

*Steel Corp.,* 519 Pa. 14, 25, 545 A.2d 861, 866 (1988). A new trial may be granted only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Tucker v. Bensalem Twp. Sch. Dist.,* 987 A.2d 198 (Pa.Cmwlth.2009).

■ A veteran seeking veteran's preference must demonstrate his or her ability to perform the job at the level of skill and with the expertise demanded by the employer. *Merrell; Brickhouse; Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A.2d 701 (1938). Once a veteran applicant satisfies that burden, then "the burden falls to the employer to establish that the veteran was not qualified." *Merrell,* 579 Pa. at 111, 855 A.2d at 721. The Supreme Court remanded this matter to the trial court to decide whether Merrell was qualified to be a social studies teacher and whether there was a flaw in the hiring process that precluded him from reaching the final steps in the hiring process.

Under the School District's own criteria, applicants receiving a rating of 3 "[m]eets criteria for successful job performance," and those receiving a rating of 4 "[e]xceed[ ] criteria for successful job performance" and are "[m]ore than acceptable." R.R. at 683a. Merrell received an overall consensus rating of 4W in the targeted selection interviews in 1997. Therefore, Merrell met the qualifications to successfully perform the duties of a social studies teacher. Bonacci, the high school principal in 1997, admitted that Merrell "had the requisite qualifications for the job." N.T. at 119; R.R. at 1060a.

As the court found, the School District did not have objective educational criteria for a social studies teacher position. The School District's expert witness, Dr. Doug Reynolds, who developed the DDI program, testified that Merrell was properly passed over in favor of DeBoer. The trial court gave no weight to his testimony and rejected the School District's assertion that DeBoer had the stronger educational background among the applicants and was the best qualified teacher. The court found that DeBoer had less than stellar performance in education-related subjects in college and that Merrell, on the other hand, held a master's degree in geography and regional planning, which was related to the social studies teacher position. He was also pursuing a master's degree in education when he applied for the position in 1997 and was awarded that degree a few months later. The trial court rejected as myopic one interviewer's testimony that Merrell received low scores because his response during the interview was not related to education. The court noted that Merrell was responding to the interviewers' request to discuss activities outside the classroom, to evaluate his quality on teamwork/collaboration.

In its opinion issued after the bench trial on liability, the trial court concluded:

In the final analysis, I find that DeBoer's accomplishments were magnified by the interviewers and Merrell's broader experience including world travel and command responsibilities were denigrated to achieve a pre-determined end— that a recent student teacher, with football prowess and recommended by the brother of a School Board member— would be hired.

As a postscript, Bonacci did testify that he evaluated what else the candidate "brought to the table." In this he ignored the financial incentive available from the U.S. ... Department of Defense under their "Troops to Teachers" program ... which would have brought cash to the School District had Merrell been hired.

The exaggerated recommendations for DeBoer particularly with respect to his minimal education criteria, his less than

stellar performance in education subjects while in college and the strong support for him from a brother of a school district member all combine to lead me to conclude that Merrell was *improperly* denied the veteran's preference.

Trial Court's September 3, 2010 Opinion at 13 (emphasis in original).

The trial court's findings are supported by the evidence in the record and establish that Merrell possessed the requisite qualifications for a social studies teacher but was prevented from reaching the final step of being selected as one of the final three applicants, the point where his interest in the veteran's preference would have ripened, due to a flaw in the School District's hiring process, and that such flaw was antagonistic to the precepts of the Act.

The School Board would have been required to hire Merrell, the only veteran among the final three applicants, had he reached the final step in the hiring process. *Merrell. See also Rasmussen v. Borough of Aspinwall,* 103 Pa.Cmwlth. 109, 519 A.2d 1074 (1987) (rejecting that the borough council's argument that it had discretion to hire any of the final three applicants recommended by the borough commission under Section 1184 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46184, and was not required to hire the only veteran on the list of the recommended applicants; the Court held that accepting such argument would make Section 7104(b) of the Act meaningless). Hence, the trial court did not err in ordering the School District to place him in a social studies teacher position as of July 1997.

## IV.

■ The School District next challenges the trial court's award of damages to Merrell for its violation of the Act. The School District argues that Merrell's total earnings from the private employers during the entire 13–year period should fully offset Merrell's backpay, fringe benefits and pension benefits. It further argues that Merrell failed to meet his obligation to mitigate damages.

■ The Act does not set forth specific remedies for a violation of the Act. Once equity has assumed jurisdiction, however, money damages may be properly awarded to insure a just result. *Solomon v. Cedar Acres E., Inc.,* 455 Pa. 496, 317 A.2d 283 (1974); *Staffaroni v. City of Scranton,* 153 Pa.Cmwlth. 188, 620 A.2d 676 (1993). The trial court had "discretion in fashioning a reasonable remedy" for the School District's violation of the Act. *Duryea Borough Police Dep't v. Pa. Labor Relations Bd.,* 862 A.2d 122, 127 (Pa. Cmwlth.2004). The trial court applied the "make whole" concept in computing Merrell's damages. To make a plaintiff whole, a damage award must return the plaintiff to "the same economic status" before the wrongful act. *Sinclair v. Ins. Co. of N. Am.,* 609 F.Supp. 397, 400 (E.D.Pa.1984), *aff'd,* 782 F.2d 1029, 1031 (3d Cir.1986).

Because the Act is silent as to a method for computing damages, the trial court looked to decisions of the National Labor Relations Board for guidance. In *F.W. Woolworth Co.,* 90 N.L.R.B. 289, 292–93 (1950), the Board ordered the employer to compute backpay based on each separate calendar quarter or portion thereof during the period from the date of the employer's discriminatory act until it offered reinstatement. Under such method, earnings in one particular quarter have no effect upon the employer's backpay liability for any other quarters. *Id.* In *National Labor Relations Board v. Seven–Up Bottling Co. of Miami, Inc.,* 344 U.S. 344, 73 S.Ct.

287, 97 L.Ed. 377 (1953), the United States Supreme Court upheld the Board's method and rejected the method used by the Court of Appeals for the Fifth Circuit calculating backpay based on earnings during the entire period when an employee was denied reinstatement (total offset method). The Court concluded that it was within the Board's power to formulate the proper method of calculating damages. Subsequently in *Isis Plumbing & Heating Co.,* 138 N.L.R.B. 716 (1962), the National Labor Relations Board reaffirmed the method of calculating backpay on a quarterly basis.

In this matter, the trial court decided to compute Merrell's backpay under a year-by-year basis, rather than a quarterly basis. The parties stipulated to Merrell's wages earned each year while working for the private employers from the 1997–1998 school year to the 2010–2011 school year and to the salary that he would have received as the School District's teacher during that period. According to the stipulation, his earnings did not exceed the teacher's salary in 2004. He earned $16,250.10 in 2004, and his teacher's salary at a master's degree level would have been $42,040 that year, resulting in a backpay amount of $25,789.10 under the year-by-year method.

The School District argues that the year-by-year method used by the trial court is inconsistent with the make-whole standard in Pennsylvania and would result in a windfall for Merrell. The School District claims that it owed no backpay to Merrell under the total offset method because he earned more than he would have earned as a teacher during the 13–year period.

Contrary to the School District's assertion, *Pisano v. Department of Environmental Resources,* 666 A.2d 379 (Pa. Cmwlth.1995), and *Pletz v. Department of* *Environmental Resources,* 664 A.2d 1071 (Pa.Cmwlth.1995), do not support its assertion that the year-by-year method may not be used in Pennsylvania. In *Pisano,* the Department demoted the petitioner from the administrative officer I position to the administrative assistant I position in lieu of a furlough and then furloughed her at her request. The State Civil Service Commission ordered the Department to reinstate her to her former position and to reimburse her for wages and emoluments since her last day of work less any wages she earned. The Court accepted the Department's position that it complied with the Commission's order by reinstating her to her original position and paying her backpay based on the difference between her salaries in the two positions. In *Pletz,* the Court held that the petitioner failed to mitigate damages when she voluntarily chose to take sick leave without pay and made herself unavailable for work. In those cases, the Court did not decide the specific issue in this case, i.e., the propriety of calculating backpay using the year-by-year method.

The facts in this case are similar to those in *Leftwich v. Harris–Stowe State College Board of Regents,* 702 F.2d 686 (8th Cir.1983), in which the Court of Appeals for the Eighth Circuit approved the year-by-year method of calculating backpay. In *Leftwich,* the United States District Court ordered the defendants to reinstate the plaintiff, finding that they engaged in age discrimination. The court, however, did not award any backpay to the plaintiff because his total interim earnings completely offset the salary he would have received from the defendant college, although he earned less than his salary as an associate professor in two of the three years. The court of appeals rejected the method used by the district court and calculated

the plaintiff's backpay using the year-by-year method, stating that the year-by-year method had been approved by that court and also by other federal courts. *See, e.g., Harkless v. Sweeny Indep. Sch. Dist.,* 466 F.Supp. 457 (S.D.Tex. 1978), *aff'd,* 608 F.2d 594 (5th Cir.1979).[8]

The trial court had discretion to fashion a reasonable remedy to make Merrell whole for the School District's violation of the Act. *Duryea Borough Police Dep't.* As the trial court stated, the amount of backpay was reduced to $25,789 because he earned more than the teacher's salary each year, except in 2004, "due to [his] energy in finding other employment." Trial Court's August 11, 2011 Opinion at 13. A use of the total earnings method would give the School District no incentive to promptly hire Merrell to reduce its backpay liability. As the Court stated in *Seven–Up Bottling Co.:*

> When an employee … obtained a better paying job than the one he was discharged from, it became profitable for the employer to delay an offer of reinstatement as long as possible, since every day the employee put in on the better paying job reduced back pay liability.

*Seven–Up Bottling Co. of Miami,* 344 U.S. at 347, 73 S.Ct. 287. While we do not find the year-by-year method to be required,

we conclude that the court did not abuse its discretion in adopting such method to return Merrell to his economic status as of the 1997–1998 school year.

■■■ The School District further argues that Merrell's backpay should not have been calculated on the basis of the teacher's salary at a master's degree level because he did not acquire a master's degree in education until a few months after he applied for the position in 1997. Article VI, Section B.2 of the collective bargaining agreements (CBA), which were effective for the school years 1998–1999 through 2003–2004, provided: "Salary increment credits are to be graduate or undergraduate. The credits must be *in the teacher's area of certification*...." R.R. 5 at 359a (emphasis added). The School District's benefits coordinator, Sharon Drudy, testified that the above-quoted language in the CBA also reflected the School District's unwritten "guidelines" in the "1997–1998" school year. N.T. at 243–44; R.R. at 1427a and Supplemental Reproduced Record at 236b. Because Merrell's master's degree acquired in 1997 was in the area of Merrell's certificate for a social studies teacher, as the trial court found, the trial court properly calculated the salary that he would have received as a teacher since 1997 at a master's degree level.

---

**8.** The School District cites *Sinclair* to support its assertion that the year-by-year method has not been adopted by Pennsylvania courts. In that case, the employer paid the plaintiff a $70,850 severance pay when he was separated from employment due to age discrimination. The amount of the severance pay exceeded his total earning loss of $21,304.96 for the two-year period. The court determined that the severance pay must be credited against the loss of earnings because it was not money that the plaintiff would have earned had he remained employed by the defendants. In addition, the plaintiff could not prevail even under the year-by-year method because the severance pay was the employer's volun-

tary contribution and could not be treated as wages that he would have earned had he not been separated from employment. The court also expressed its disagreement with the year-by-year approach, stating that such approach was a departure from the make-whole principle and would discourage mitigation of damages. The same reasoning does not apply to this case where Merrell mitigated damages by earning more than he would have earned as a teacher in 12 of the 13 years. The *Sinclair* decision has no application to the trial court's exercise of its discretion to fashion a reasonable remedy. Further, the federal district court's decision is not binding upon this Court in resolving the issue.

■ The School District argues that Merrell failed to meet his obligation to mitigate damages because he applied for only one or two of the sixty-five substantially equivalent social studies teacher positions available in the neighboring school districts since 1997. The School District further argues that Merrell was not entitled to backpay because he withdrew from the employment market for teachers by working in the occupational safety industry and pursuing OSHA recertification.

■ A plaintiff has a duty to mitigate damages. *Circle Bolt & Nut Co. v. Pa. Human Relations Comm'n*, 954 A.2d 1265 (Pa.Cmwlth.2008). The duty to mitigate damages, however, "is not onerous and does not require success." *Id.* at 1270. All that is required to mitigate damages is to make "an honest, good-faith effort." *Id.* at 1271. The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. *Id.* The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and responsibilities. *Booker v. Taylor Milk Co.*, 64 F.3d 860 (3d Cir.1995). Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder. *Id.*

Merrell remained in the workforce by continuing to work in the occupational safety industry and kept his teaching certificate in an active status after the School District did not hire him in 1997. The mere fact that he did not apply for a social studies teacher position more aggressively does not establish his failure to mitigate damages. He was not underemployed or underpaid. Indeed, he earned more than he would have earned as a teacher each year except one. Due to his efforts, the backpay amount for more than the 13–year period was reduced to $25,789. The record amply demonstrates that Merrell exercised reasonable due diligence to mitigate damages and has not withdrawn from the work force.

■ The School District claims that because "[a] teacher accepts a lesser salary ... with the knowledge that the pension benefit in retirement years will be greater," the award of pension benefits "is fundamentally inequitable and results in an impermissible windfall and double recovery." School District's Brief at 38. In support, the School District relies on the testimony of its expert witness, Dr. James Kenkel, rejected by the trial court, that he calculated Merrell's total lifetime earnings from the private employers by including, *inter alia*, the value of 401(k) plans provided by the private employers. He admitted, however, that he did not know how much the employers and Merrell contributed to the plans and did not recall checking the plan documents. N.T. at 355–56; R.R. at 1470a–71a. The trial court properly rejected Kenkel's testimony as irrelevant. Pension benefits would have accrued to Merrell had the School District hired him in July 1997. The trial court did not abuse its discretion in ordering the School District to enroll him in PSERS and pay its share of contribution to PSERS.[9]

9. Kenkel relied on *Helpin v. Trustees of the University of Pennsylvania*, 608 Pa. 45, 54, 10 A.3d 267, 272 (2010), which held that damages for lost *future* income from business profits were properly calculated using the total offset method, under which "a court does not discount the award to its present value but assumes that the effect of the future inflation rate will completely offset the interest rate, thereby eliminating any need to discount the award to its present value." [quoting *Kaczkowski v. Bolubasz*, 491 Pa. 561, 579, 421 A.2d 1027, 1036 (1980)]. The *Helpin* holding does not apply to this case where the issue is

The School District went on to argue that the trial court's award of out-of-pocket expenses paid by Merrell for fringe benefits was based on mere speculation and conjecture. As the Supreme Court stated, however:

[M]ere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct.... The basis for this rule is that the breaching party should not be allowed to shift the loss to the injured party when, damages, even if uncertain in amount, were certainly the responsibility of the party in breach.

*Spang & Co.,* 519 Pa. at 26, 545 A.2d at 866 (1988) [quoting *Pugh v. Holmes,* 486 Pa. 272, 297, 405 A.2d 897, 910 (1979) ]. If the evidence provides a reasonably fair basis for calculating damages, it is legally sufficient to support an award of damages. *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980).

At the trial court's direction, both parties submitted a "like to like" comparison of the costs paid by Merrell to obtain health, dental and vision care coverage and life insurance, and the costs of benefits that the School District would have provided had he been hired in 1997. Trial Court's February 25, 2011 Opinion at 10. Merrell also testified as to benefits he received from the private employers and presented numerous supporting documents. Based on such evidence, the trial court found Merrell's out-of-pocket expenses for fringe benefits to be $5785.60. Thus, the School District's argument that trial court's award of the out-of-pocket costs for fringe benefits is based on speculation is not supported by the record.

the proper method of calculating backpay and

## V.

Finally, the School District argues that the trial judge acted as Merrell's advocate and engaged in "improper practice." School District's Brief at 51. The School District lists the following to support its argument: the trial judge's statement that he did not see anything in the exhibits supporting the testimony of a witness; his statement regarding the model for calculating damages at the pre-trial conference; advising the School District's counsel that "you'd be better off to not telephone judges' chamber," R.R. at 1322a; his discussion of settlement at the pretrial conference; directing Merrell's counsel to think about the School District's proposal to present certain exhibits; questioning the School District's witness with a hypothetical; asking the School District's witness if he thought that the School District should get the benefits of Merrell's hard work; his statement that the opinion of the School District's witness was "a little unfair," *id.* at 1492a; and, limiting the scope of evidence permitted to be presented at the trial.

The trial judge has the right to question witnesses to clarify disputed issues or vague evidence. *Tiburzio–Kelly v. Montgomery,* 452 Pa.Super. 158, 681 A.2d 757 (1996). Unless the judge's questions constituted an abuse of discretion, resulted in discernible prejudice, or showed capricious disbelief or prejudgment, a new trial will not be granted. *Mansour v. Linganna,* 787 A.2d 443 (Pa.Super.2001). Further, the weight to be given to witnesses' testimony is up to the trial judge as a factfinder in the non-jury trial. *Ruthrauff.* To justify a grant of a new trial, the evidentiary ruling must be shown to have been not only erroneous but also harmful to the complaining party. *Ratti v. Wheel-*

lost benefits, not *future* lost business income.

*ing Pittsburgh Steel Corp.*, 758 A.2d 695 (Pa.Super.2000). An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the judgment. *Id.*

None of the examples listed by the School District supports the grant of a motion for post-trial relief. The School District did not object to the trial judge's statements and questioning of the witnesses. The trial judge's statements relied on by the School District did not in any way exhibit bias against the School District. The record also demonstrates that the trial judge asked the witnesses questions to clarify their testimony. Further, the trial judge did not abuse his discretion in refusing to keep the record open to permit the School District to present additional evidence regarding Merrell's receipt of disability benefits. The trial judge accepted Merrell's testimony that he could still work as a teacher despite the work injury. Therefore, his receipt of disability benefits was irrelevant to his ability to perform the duties of a teacher.

Based on the foregoing discussion, the judgment entered in favor of Merrell and against the School District is affirmed.[10]

### ORDER

AND NOW, this 29th day of August, 2012, the judgment entered by the Court of Common Pleas of Allegheny County in the above-captioned matter is AF-FIRMED. The request of William Merrell for assessment of costs for submitting the supplemental reproduced record against Chartiers Valley School District is DENIED.

10. Merrell argues that the School District should be assessed costs incurred in submitting the 244–page supplemental reproduced record. He alleges that he was forced to submit the supplemental reproduced record because despite his request, the School District refused to include certain exhibits unfavorable to its position in the reproduced record. The School District responds that Merrell cited only 40 pages of the supplemental reproduced record in his brief. Pa. R.A.P. 2154(a) provides in relevant part that "[i]n designating parts of the record for re-production, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination and shall not engage in unnecessary designation." The School District included most of the relevant exhibits in the reproduced record consisting of 6 volumes, 1507 pages. Because the School District's failure to include all of the exhibits in the original record did not affect our appellate review, we will deny Merrell's request for assessment of costs for submitting the supplemental reproduced record.