IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paige Goodin                                    :
                                                :
          v.                                    :  No. 870 C.D. 2024
                                                :  Argued: May 12, 2026
Police Officer Christopher Fountas              :
and Police Officer Johangelie                   :
Thomas-Estrada,                                 :
                       Appellants               :


BEFORE:    HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED: June 22, 2026


        Two City of Philadelphia (City) Police Officers, Christopher Fountas
(Fountas) and Johangelie Thomas-Estrada (Estrada) (individually, Officer and
collectively, the Police), appeal from the June 5, 2024 order of the Court of Common
Pleas of Philadelphia County (trial court) denying their post-trial motions for
judgment notwithstanding the verdict (JNOV).  Following a jury trial, the trial court
entered a June 13, 2024 final judgment in favor of Paige Goodin (Goodin) and
against the Police in the amount of $4.1 million.  After review, we affirm.

                              **BACKGROUND**

        Goodin initiated this action by Complaint on February 4, 2022.  Trial Court
Opinion (Trial Ct. Op.), 11/21/24, at 1.  Goodin alleged that on October 27, 2020,

while attempting to protect one of her two daycare locations[1] from riots in West Philadelphia, she sustained personal injuries, emotional injuries, and economic damages after Estrada struck her in the head with a police baton and Fountas wrongfully arrested her.[2] *Id.* The case proceeded to jury trial from April 8-12, 2024, against Fountas for assault, battery and false arrest, and against Estrada for assault, battery and intentional infliction of emotional distress. The jury found the Police acted with willful misconduct and awarded Goodin $2 million in compensatory damages against each Officer and $50,000 in punitive damages against each Officer, for a total award of $4.1 million. Reproduced Record (R.R.) at 1186a.

On June 5, 2024, the trial court denied the Police's post-trial motions,[3] and the Prothonotary entered judgment on June 13, 2024. On appeal, the Police challenge

---

[1] Throughout the record, Goodin's two daycare locations are referenced as 52nd Street and 60th Street. The October 27, 2020 riot occurred at the 52nd Street location, and Goodin closed this facility approximately one month later. Trial Ct. Op. at 5.

[2] Goodin also sued Sergeant Strubinger of the City Police for negligent supervision; however, the trial court granted the City's motion for compulsory non-suit and the motion for directed verdict for willful misconduct. Trial Ct. Op. at 2, n.1.

[3] The Police have narrowed their issues for appellate review, as their post-sentence motions also challenged the trial court's failure to grant JNOV as to Goodin's claims for false arrest, assault and battery against Fountas, and claims for intentional infliction of emotional distress, assault and battery against Estrada. Appellants' Br. at 15. Specifically, the Police question:

> Where the trial court upheld the jury's finding that [the Police] were liable for (among other things) assault and battery arising from an altercation with [Goodin] during the October 2020 Walter Wallace riots in West Philadelphia:

1. Should this Court reverse and enter JNOV for [the Police], given that the unfolding chaos of the evening precluded a reasonable jury from finding that either [Officer] acted with the high degree of intentionality required to prove willful misconduct; and given that no reasonable jury could doubt that [Goodin] resisted and attempted

**(Footnote continued on next page…)**

2

the trial court's failure to enter JNOV based upon lack of proof of willful misconduct and, alternatively, the failure to grant a new trial on damages, or at least to order a significant reduction.

## DISCUSSION

JNOV may be entered where the movant is entitled to judgment as a matter of law or where the evidence is such that no two reasonable persons could disagree that the verdict should have been rendered for the movant. *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992). This Court's review of a denial of JNOV or for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. *Glover v. Dept. of Transp.*, 647 A.2d 630, 631 (Pa. Cmwlth. 1994). Moreover, in conducting such review, this Court is required to view the evidence in the light which is most favorable to the verdict winner and give such party every favorable inference. *Id.* "[A] new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa.

---

to punch the [P]olice prior to being physically tackled by one [Officer] and struck by a baton by the other [Officer]?

2. Alternatively, should the Court order a new damages trial (or a significant remittitur) because the jury's award of $4 million in damages for lost profits from [Goodin's] daycare business – due to her alleged inability to work at one of her two locations – was unsupported and impermissibly speculative where: the business had been losing money before the incident; [Goodin's] expert based his future-profits projections upon one anomalous and non-reproducible profit-making year when the business was closed for COVID but received large government assistance funds; and the expert based his lost-profits conclusion upon the one branch's closure, but ignored the fact that the business's other branch continued to operate successfully, that [Goodin] continued to work there, and that children transferred into the remaining branch from the closed branch?

*Id.* at 4-5.

3

1994) (quotation omitted). Moreover, our Supreme Court instructed "[i]t is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function." *Id.* at 1190. In assessing whether the trial court palpably abused its discretion, this Court must

> "examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion."

*Id.* (quotation and citations omitted).

The Police first contend the trial court erred in refusing to enter JNOV, because no reasonable jury, given the unfolding chaos of the evening, could have found either Officer acted with the high degree of intentionality required to prove willful misconduct. Appellants' Br. at 4. The Police assert they were attempting to restore order, not act unlawfully. *Id.* at 18.

Section 8550 of the Political Subdivision Tort Claims Act (Tort Claims Act) provides a police officer with official immunity from liability unless his conduct constitutes "willful misconduct." 42 Pa.C.S. § 8550. The trial court noted this Court interpreted "willful misconduct" as "willful misconduct aforethought" and construed it synonymously with "intentional tort." Trial Ct. Op. at 13. "Willful misconduct means the actor 'desired to bring about the result that followed or at least that he was aware that it was substantially certain to ensue.'" *Id.* (citations omitted).

Here, the trial court determined the evidence supported the jury's finding that the Police acted with willful misconduct. First, Estrada testified although Goodin

4

did not pose a threat, Estrada was wearing heavy riot gear and a cloudy mask that obstructed her view, and she intended to strike Goodin with her police baton. *Id.* Estrada testified she did not use an alternative means of restriction that would have required less force. *Id.* Second, Fountas swung his baton at Goodin, and Goodin testified she grabbed it to prevent being hit. *Id.* Fountas testified after Goodin punched him in the face, he grabbed her, and she fell to the ground. *Id.* at 13-14. The trial court concluded if the jury believed Goodin did not punch Fountas in the face, the jury reasonably could have concluded [the Tort Claims Act] prohibited him from making contact with Goodin. *Id.* at 14. Thus, the trial court found the jury's finding of willful misconduct supported by the evidence. *Id.*

We find no abuse of discretion. The Police emphasize their actions in trying to "subdue a flailing" Goodin during a chaotic evening did not rise to the high degree of intentionality required to prove willful misconduct. Appellants' Br. at 18. Fountas contends even if Goodin did not initially hit him, video evidence shows Goodin "indisputably jabbed" at him when she was shoved in the back. *Id.* However, Goodin was never questioned during trial about a specific jabbing motion. Accordingly, the jury, as fact-finder, was entitled to determine the weight to ascribe to Goodin's actions. We will not disturb its findings on appeal. Moreover, Goodin testified all of her arm movements were defensive in nature, as she was trying to reach for her phone and block nightsticks from hitting her. R.R. at 123a-24a. The jury, having viewed all of the evidence, was in the best position to evaluate these claims and interpret the video footage. Insofar as Fountas would have this Court ignore the jury's findings and reweigh the evidence in his favor, we cannot do so.

Estrada explained she did not observe Goodin until near the end of the incident, and in attempting to aid her fellow officers, she intended to hit Goodin on

5

the arm but instead, hit her on the head. Appellants' Br. at 26. However, Estrada admitted before intervening, she did not observe Goodin punch Fountas. R.R. at 215a-16a. Estrada acknowledged striking someone in the head with a baton is contrary to police protocols. *Id*. at 225a. Estrada testified she was trained to use lesser control techniques before employing baton strikes, but she did not do so. *Id*. at 220a-21a. Similar to Fountas, we refuse to reweigh the jury's findings. The trial court did not err in determining the record supported the jury's finding of willful misconduct by Estrada.

Second, the Police contend the trial court erred in refusing to award a new damages trial, or a significant reduction, as the jury's award of $4 million in lost profits for Goodin's daycare business, based upon her inability to work at one of her two business locations, was unsupported and impermissibly speculative. Appellants' Br. at 4.

In reviewing a damages award, the Supreme Court has recognized that "[t]he duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence." *Ferrer v. Trustees of Univ. of Pa.*, 825 A.2d 591, 611 (Pa. 2002) (internal quotation omitted). Importantly, the appellate courts "should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." *Id.* (internal quotation omitted). Under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. *Bailets v. Pa. Tpk. Comm'n*, 181 A.3d 324, 336 (Pa. 2018) (citations omitted). "Judicial reduction of a jury award is appropriate only when the award is plainly

6

excessive and exorbitant." *Id.* (citation omitted). "The refusal of a remittitur is peculiarly within the discretion of the trial court and will not be reversed absent an abuse of discretion or error of law." *Id.* (citation omitted).

The Police first contend Goodin failed to establish their actions were both the cause in fact and the proximate cause of her injuries, both necessary to establish causation.[4] Regarding proximate causation, the Police assert although plaintiffs frequently recover lost earnings capacity claims in tort cases, these are categorically different from lost profits claims. Appellants' Br. at 30. In turn, the Police contend Goodin failed to establish her absence caused the business's lost profits, because she had 30 total employees between the two business locations, and her mother assisted her in running the business. *Id.* at 33. Regarding but-for causation, the Police argue even without the alleged misconduct, the business would have struggled. *Id.* at 34. The Police emphasize the business lost thousands of dollars in 2019 before the pandemic and the incident, and the Police assert two months before the incident, a change to government pandemic subsidies severely and detrimentally impacted the business. *Id.* at 34-35. In turn, the Police criticize Goodin's expert's analysis that the business would have earned millions of dollars in profits if only the Police had never interacted with Goodin. *Id.* at 35.

We disagree. The trial court noted in its decision the jury's award was supported by the trial testimony and concluded it did not err in denying the Police's motion for a new trial on grounds the verdict was "excessive, speculative, and unforeseeable." Trial Ct. Op. at 15. The trial court noted Goodin's presentation of forensic economist Andrew Verzilli (Verzilli) who testified Goodin had a retirement

---

[4] "Proximate cause" is defined as "[a] cause that is legally sufficient to result in liability," and a "cause in fact," also known as "but-for cause," is defined as "[t]he cause without which the event could not have occurred." *Cause*, Black's Law Dictionary (12th ed. 2024).

age of 67 years old and closing the daycare caused her to "conservatively lose about $2,200,000." *Id.* Particularly regarding causation, the trial court recognized "[t]he jury found that the actions of [the Police] directly caused . . . Goodin to close her daycare and compensated her for her resulting financial loss; the jury accepted the testimony and opinions of . . . Verzilli." *Id.*

In addition, Dr. Frank Dattilio, a psychologist, testified Goodin suffered Post Traumatic Stress Disorder (PTSD) from the October 27, 2020 incident, and she closed one of her two daycare locations because "it was too intolerable for her" to return to that locale. R.R. at 1011a-12a. Goodin also testified about the trauma she experienced upon attempting to return: "I went into shock. I was anxious . . . . I even vomited once I got into the building." *Id.* at 111a. Goodin testified her specialized certification and sole physical presence were legally required for her business to operate, and her mother did not have the requisite certification. *Id.* at 111a-12a. Lost profits may be recovered in tort cases where "profits are entirely, or almost entirely, the direct result of the personal labor and endeavor of the owner." *Dempsey v. Scranton*, 107 A. 877, 879 (Pa. 1919). Thus, substantial evidence supports the jury's determination the Police's actions were the proximate cause of Goodin's economic damages. Thus, we conclude that the trial court did not abuse its discretion.

Regarding but-for causation, the trial court noted the jury rejected the Police's contention Goodin closed one daycare center location because of changes in state subsidization. Trial Ct. Op. at 15. The revenue adjustment occurred in September 2020, and Goodin's decision to close did not occur until after the October 27, 2020 incident. Goodin denied she closed the business because of financial issues. R.R. at 112a, 126a. Goodin testified the revenue adjustment raised "[n]o concern about

8

the business's future, as "[p]arents were not pulling their children out. They were just losing their funding." *Id.* at 116a. Thus, substantial evidence supports the jury's determination the Police's actions were the factual cause of Goodin's economic damages. We discern no abuse of discretion by the trial court.

The Police next contend Goodin failed to prove her $4 million claim with reasonable certainty. Appellants' Br. at 36. More specifically, the Police allege error in five regards, entitling them to either a new trial or significant remittitur. *Id.* at 37.

First, the Police assert Goodin improperly asked the jury to award $4 million in lost profits because her expert Verzilli never directly testified to this figure. *Id.* at 37-38. In making this assertion, the Police concede the $4 million amount was within Verzilli's report and he testified about it when he responded to a hypothetical question at trial. *Id.* at 38-42.

We disagree. A review of the record reveals Goodin presented evidence supporting approximately $2.2 million in lost business profits, a figure Verzilli testified could potentially double if the location had reached full capacity. R.R. at 170a. The trial court charged the jury about expert opinion testimony, including the expert's use of hypothetical facts to formulate an opinion. *Id.* at 309a. Specifically, the trial court instructed:

> In general, the opinion of an expert has value only when you accept the facts upon which it is based. This is true whether the facts are assumed hypothetically by the expert or they come from the expert's personal knowledge, from some other proper source, or from some combination of these.

*Id.* Thus, there is no merit to the Police's assertion that Goodin suggested an unsupported damages number to the jury. Accordingly, the trial court did not abuse its discretion.

Second, the Police contend Verzilli's lost profits calculation improperly extrapolated from only one year's income, 2020, a year including anomalous profitability due to government subsidies. Appellants' Br. at 42-43. The Police suggest Verzilli should also have accounted for 2019, the year the daycare lost $200,000. *Id.* at 43.

We disagree with the Police's characterization of Verzilli's testimony. The Police attempt to characterize Goodin's business as financially troubled before the incident, emphasizing a $200,000 loss in 2019 and suggesting Goodin inevitably would have closed the business regardless of their misconduct. However, careful review of the record reveals substantial evidence of the business's clear upward financial trajectory. Verzilli attributed the 2019 loss to higher than normal labor costs that year, which were much lower in 2018 and 2020. R.R. at 169a. Thus, the evidence shows 2019 to be the anomalous year, as Verzilli summarized, "net income in '18 was positive. She turned it around in '20." *Id.* at 177a. Regarding the Police's contention Verzilli's 2020 calculations are askew because of government subsidies, Verzilli testified he based his lost profits calculation on the lower revenue figures from September-December 2020, and not on the higher figures from earlier in the year. *Id.* By using the post-subsidy revenue as his baseline, Verzilli's analysis results in a more conservative damages estimate. Thus, substantial evidence supports the jury's finding. The trial court did not abuse its discretion in refusing to set aside the jury's verdict.

10

Third, the Police contend Verzilli incorrectly assumed Goodin would not have been able to recoup any of the lost 52nd Street earnings by transferring students to the 60th Street location, or even other locations. Appellants' Br. at 44. Further, the Police suggest even if 60th Street was at capacity, Goodin could have opened a different location. *Id.* at 45.

We disagree. A plaintiff has a duty to mitigate damages; however, this duty "'is not onerous and does not require success.'" *Merrell v. Chartiers Valley Sch. Dist.*, 51 A.3d 286, 298 (Pa. Cmwlth. 2012) (quotation omitted). Mitigation is for the fact-finder. *Id.* (citation omitted). Pennsylvania Suggested Standard Civil Jury Instruction 7.100 addresses the mitigation of damages. Pennsylvania Suggested Standard Civil Jury Instructions, § 7.100 (2024). Here, the trial court's instruction precisely parroted the standard instruction, as the trial court charged the jury that Goodin needed to "make reasonable efforts to reduce her . . . financial damages" and if they found "Goodin could have avoided financial damages without unreasonable expense, risk, or humiliation, she is not entitled to recover damage for that harm." R.R. at 315a. Thus, the trial court did not err as to the law.

The Police's assertion Verzilli's model disregards Goodin's transfer of students from the 52nd Street location to the 60th Street location is contrary to the evidence. When questioned on cross-examination about students transferring to 60th Street following the closure, Verzilli replied, "My understanding is the location has closed. And although some students moved over, you're still out a location where she would have been open." *Id.* at 174a. Further, the Police's contention Goodin should have simply opened another facility disregards Goodin's unrefuted testimony concerning the specialized nature of childcare facilities and the extensive regulatory requirements. Specifically, Goodin testified eight months of work were required

11

before she could open the 52nd Street location. *Id.* at 98a. She also explained the intrinsic value of 52nd Street; namely, it "came with everything we needed" as "a preexisting daycare." *Id.* at 99a. The evidence of record also supports a jury determination Goodin could not mitigate damages absent unreasonable expense, risk, or humiliation. The evidence also demonstrates the difficulty in finding a new turn-key locale. Thus, substantial evidence supports the jury's finding. The trial court did not abuse its discretion in refusing to upset the jury's verdict.

Fourth, the Police criticize Verzilli's method of calculating expenses, contending his formula necessarily implies a plaintiff incurs expenses only when she earns money. Appellants' Br. at 47. Another way, the Police contend Verzilli's formula disregards fixed capital expenses, such as rent and heat, and focuses only on variable expenses, thus guaranteeing a plaintiff automatically makes a profit. *Id.*

Expert testimony on projected business losses is admissible and can form the basis of a jury's damages determination. *Bolus v. United Penn Bank*, 525 A.2d 1215, 1225-26 (Pa. Super. 1987).[5] Our Supreme Court has recognized the "peculiar difficulties" in proving prospective lost profits and has identified, among other things, evidence of past profits and "[t]he evidence of experts if based on anything more than individual opinion or conjecture" as types of permissible evidence to establish damages. *Id.* at 1226 (quotations omitted). Here, review of the record reveals the Police had a full and fair opportunity to cross-examine Verzilli about his methodology. His computation incorporated historical data from Goodin's business, accounted for variable costs and made conservative assumptions regarding future growth. This constitutes the substantial evidence our Supreme Court has held could

---

[5] Although Pennsylvania Superior Court decisions are not binding on this Court, they may provide persuasive authority where they address analogous legal issues. *DeSantis v. Lenox Place Condo Ass'n, Inc.*, 316 A.3d 1119, 1121 n.4 (Pa. Cmwlth. 2024).

establish business losses, and supports the jury's finding. The trial court did not abuse its discretion in refusing to set aside the jury's verdict.

Fifth, the Police criticize Verzilli's assumption Goodin owned the entire business, and disregarded Goodin's testimony on direct examination that her mother was her "partner." Appellants' Br. at 48. In turn, the Police contend the jury was required to cut the damage award in half. *Id.*

We disagree. The Police's argument mischaracterizes the evidence. The tax returns submitted into evidence during Goodin's direct examination established Goodin's 100% ownership, as each denoted "Paige Goodin, 100 percent." R.R. at 113a. On both direct and cross-examination, Verzilli testified he used these tax returns to formulate his opinion. *Id.* at 168a, 173a. The Police did not question Verzilli about Goodin having anything other than a 100% ownership interest and failed to introduce any evidence requiring a reduction in the lost profits allocation. Thus, substantial evidence supports the jury's determination of Goodin's ownership percentage. The trial court did not abuse its discretion in refusing to set aside the verdict.

Finally, the Police argue the $4 million damage award was clearly based in lost profits; however, to the extent it included other types of non-economic damage, such as emotional distress or pain and suffering, this Court should remand for a new trial to determine the specific amounts. Appellants' Br. at 49-50.

We disagree. At a charging conference, the Police objected to a special verdict slip, and the jury utilized a general verdict slip. R.R. 275a, 1186a. During closing argument, Goodin's counsel requested the jury award not only compensatory damages for economic loss, but also pain and suffering and loss of life's enjoyments. *Id.* at 292a-93a. The trial court instructed the jury its award must compensate

13

Goodin for the past and future physical and financial injury she sustained. *Id.* at 310a. The court then specifically instructed regarding aggravation of a preexisting condition, physical and mental pain and suffering, embarrassment and humiliation, loss of ability to enjoy life's pleasures and disfigurement. *Id.* at 310a-11a. Under the general verdict rule, "when a litigant fails to request a special verdict slip that would have clarified the basis for a general verdict, and the verdict rests upon valid grounds, 'the right to a new trial is waived.'" *Cowher v. Kodali*, 283 A.3d 794, 804 (Pa. 2022) (quotation omitted). "The rule 'promote[s] judicial efficiency' by preventing needless retrials as well as 'fairness' by keeping a litigant from benefiting from its own omission in failing to request a special verdict slip." *Id.* (citation omitted). Here, by objecting to a special verdict slip, the Police waived the right to a new trial. We find no abuse of discretion by the trial court.

Addressing the Police's alternative request for remittitur, the trial court denied the request because it "did not find the jury's award to be guided by partiality, mistake, prejudice or corruption," and found "sufficient evidence from [Verzilli] was presented to the jury to support its award and the jury's award did not shock this Court's [conscience] or sense of justice." Trial Ct. Op. at 20-21. The Police contend the trial court's reference to Verzilli demonstrates the compensatory award was based exclusively on economic loss. Appellants' Reply Br. at 21.

We disagree. By failing to request a special verdict slip, the Police waived their right to challenge the composition of the jury's compensatory damage award. This is especially true where Goodin requested both economic and non-economic damages, and the trial court instructed the jury accordingly. The trial court did not abuse its discretion in denying remittitur.

14

## CONCLUSION

For the reasons set forth above, we affirm the trial court's June 5, 2024 order.

_____
STACY WALLACE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paige Goodin             :
                               :
         v.                 : No. 870 C.D. 2024
                               :
Police Officer Christopher Fountas    :
and Police Officer Johangelie         :
Thomas-Estrada,                 :
           Appellants   :

## **O R D E R**

    **AND NOW**, this 22nd day of June 2026, the June 5, 2024 order of the Court of Common Pleas of Philadelphia County is hereby **AFFIRMED**.

_____
STACY WALLACE, Judge