# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 515 C.D. 2023 |
| | : | Submitted: February 4, 2025 |
| Adva Epstein | : | |
| | : | |
| Appeal of: Adva Epstein | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE STACY WALLACE, Judge (P.)
          HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: April 2, 2025

Adva Epstein (Epstein) appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas), dated April 20, 2023, denying a post-trial motion seeking a reduction of a statutory fine imposed by common pleas due to Epstein's failure to remediate violations of The Philadelphia Code (Code).[1] After careful review, we affirm.

## I.     BACKGROUND

### *The Code Violations*

On August 28, 2018, the City of Philadelphia (City), Department of Licenses and Inspections (Department), issued an Initial Notice of Violation and Order (Initial Notice), informing Epstein of various violations of the Code for the property located at 301 Delmar Street, Philadelphia, Pennsylvania (Property). (Reproduced Record

---

[1] PHILADELPHIA (PHILA.), PA., CODE §§ 1-101–22-1409 (2024).

(R.R.) at 42a-43a.)[2]  Specifically, the Initial Notice cited Epstein "because construction debris [was] not being properly removed from the job site," and indicated that Epstein needed to "remove all debris in [the] street and at [the] rear lot." (*Id*. at 42a.)  The Initial Notice further indicated that "[a] use registration permit is required for every new use commenced on any land or in any structure" and that Epstein needed to obtain a "zoning permit and water department approval for [a] storm water management plan, removing trees and grubbing on a steep slope."[3]  (*Id*.)  On October 3, 2018, Department issued a "Final Warning," stating that a re-inspection of the Property was conducted and that the Property remained in violation of the Code.  (*Id*. at 45a-46a.)  The Final Warning informed Epstein that if the violations were not remedied, the City would pursue an enforcement action.  (*Id*. at 45a.)

### *The Enforcement Action and Bench Trial*

On April 25, 2019, because the violations were not remedied, the City filed a Complaint against Epstein in common pleas, seeking a permanent injunction directing Epstein to remediate the violations, statutory fines, and re-inspection fees. (*Id*. at 34a-39a.)  Concurrently with the Complaint, the City also sought a rule to show cause why the requested relief should not be granted, which common pleas issued.  (*Id*. at 29a; Original Record (O.R.) Item 3.)  On July 16, 2019, the parties entered into an agreement, which was approved by common pleas, wherein Epstein

---

[2] Pennsylvania Rule of Appellate Procedure 2173 requires that a reproduced record "shall be numbered separately in Arabic figures . . . followed in the reproduced record by a small a." Pa.R.A.P. 2173.  We note that we have added the letter "a" following the page numbers in our citations to the Reproduced Record, although Epstein did not do so in accordance with Rule 2173.

[3] *See, e.g.*, *Grub*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/grubbing (last visited April 1, 2025) ("[T]o clear by digging up roots and stumps[.]"); *Grub*, ENCYC. BRITANNICA, https://www.britannica.com/dictionary/grubbing (last visited April 1, 2025) ("[T]o dig in the ground for something that is difficult to find or remove[.]").

agreed, within 90 days, to correct the violations by submitting the relevant permit applications to Department, to refrain from additional work on the Property unless a water management plan was submitted and approved, and to allow Department to enter and inspect the Property. (R.R. at 282a-84a.) The order also stated that a water sock was to be placed by a drain to keep soil or debris from entering. (*Id*. at 283a.) The July 16, 2019 agreement and order further informed Epstein that failure to remediate the violations as agreed would result in the imposition of an absolute fine of $2,300 and a daily fine of $2,300, which would begin to accrue on July 16, 2019, and continue until the Property violations were remedied. (*Id*. at 284a.)

Common pleas held a hearing on October 22, 2019, to determine compliance and entered another order, stating that Epstein was required to "[t]ake all reasonable steps to obtain proper zoning, including applying for any variances needed; and provide documentation that [the] [w]ater [d]epartment does not require [a] storm water management plan." (*Id*. at 286a.) The order further held in abeyance the fines but reserved the right of the City to seek them at the next hearing. (*Id*. at 287a.) On December 19, 2019, common pleas held an additional hearing, where Epstein appeared pro se and common pleas entered another order. (*Id*. at 288a-91a.) Through this order, Epstein was directed to, in relevant part, "pursue [a Zoning Board of Adjustment] appeal to obtain [a] zoning permi[t]," to refrain from work on the Property until the required permits are obtained, and to "[t]ake all reasonable steps to ensure that Department has marked the code violations as 'complied'" by April 7, 2020, which was the date of the next hearing. (*Id*. at 289a.) This order also indicated that a $2,300 daily fine would be imposed if Epstein did not comply with the order, beginning to accumulate April 7, 2020. (*Id*. at 291a.)

3

Due to the COVID-19 pandemic, this case did not resume until April 1, 2021, when common pleas held a case management conference. (Order of Feb. 12, 2021, O.R. Item 8.) On April 12, 2021, the City praeciped for default judgment against Epstein. (R.R. at 293a.) On October 11, 2021, through counsel, Epstein moved to open the default judgment, which common pleas denied. (*Id*. at 47a-62a, 252a.) On June 1, 2022, Epstein appealed common pleas' denial to this Court. (*Id*. at 253a.) However, while that appeal was pending, the parties agreed to stay the appeal pending anticipated discontinuance and to remand the matter to common pleas to take further action with respect to the parties' agreement. (*Id*. at 276a.) Upon remand, common pleas issued an "Order by Agreement," vacating the damages assessment, affirming the default judgment as to liability, and scheduling a hearing to assess damages and determine the appropriate fine. (*Id*. at 277a.)

On November 15, 2022, common pleas held a bench trial.[4] (Common Pleas' Opinion (Op.) at 2; R.R. at 696a.) Saleem Muhammad, Department's Inspector, testified about the nature of the violations, the issuance of the Initial Notice, the re-inspection and Final Warning, and Epstein's attempts to remediate the violations and comply with the Code. (R.R. at 362a-68a.) Epstein testified about the attempts to bring the Property into compliance with the Code and that Epstein's husband, Robert Perrone, had hired an attorney and other professionals to deal with the Property. (*Id*. at 373a-75a.) Epstein's testimony also indicated that Epstein was unable to pay the fine, which was $98,000 at the time of the bench trial. (*Id*. at 374a.)

Perrone then testified, confirming that an attorney and other professionals were hired to handle the issues with the Property. Perrone further testified that he

---

[4] The bench trial transcript is located on pages 356a-82a of the Reproduced Record.

did not discover the violations until entry of default judgment and that the previous attorney had not appealed the violations to the zoning board. (*Id*. at 376a-77a.)

*The Final Order and Post-Trial Motion*

On February 6, 2023, common pleas issued the Final Order, wherein it credited the City's evidence and assessed a statutory fine of $65,333.33 and a re-inspection fee of $1,350, and ordered Epstein to correct the violations by May 1, 2023. (R.R. at 383a-87a.) However, the Final Order indicated, in pertinent part:

> The total statutory amount of accrued fines to which the City is entitled as of November 8, 2022[,] is $3,456,900[]. This fine amount was calculated as follows: (the period from September 28, 2018[,] to November 8, 2022[,] is 1,503 days including the end date; 1 violation x $300[] per violation per day x 1,503 days + 1 Class 111 violation x $2,000 per violation per day x 1,503 days = $3,456,900[]).

(R.R. at 384a.)

Epstein then timely filed a Post-Trial Motion, seeking a reduction of the statutory fine because, according to Epstein, the fine was "excessive and punitive, and violates [Section 17 of First Class City Home Rule Act (Home Rule Act),][] 53 P[].S. [§] 13131,[5] the Pennsylvania State Constitution, [a]rticle I, [s]ection 13, [PA. CONST. art. I, § 13], and the [Eighth] Amendment of the United States Constitution[, U.S. CONST. amend. VIII,]" and is inconsistent with the City's Home Rule Charter. (R.R. at 391a, 394a.)

On April 20, 2023, following briefing, common pleas denied the Post-Trial Motion. (R.R. at 694a.) Through the accompanying opinion, common pleas found that the statutory fine did not violate the City's Home Rule Charter, that the statutory fine was not excessive under article I, section 13 of the Pennsylvania Constitution

---

[5] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. § 13131.

5

or the Eighth Amendment to the United States Constitution, and that common pleas did not abuse its discretion by imposing the statutory fine on Epstein. (Post-Trial Motion Op. at 3-6; R.R. at 697a-700a.) Specifically, as to a purported conflict between the statutory fine and the City's Home Rule Charter, common pleas held that the fine complied with the City's Home Rule Charter because the Home Rule Act does not "mention [] the frequency of the issuance of said fines, forfeitures and penalties, nor legislative history to guide this court as to the intent of legislators who passed [*the Home Rule Act*; rather, t]he frequency of the issuance of fines is left to the discretion of [the City]." (*Id*. at 697a (emphasis in original).)

Common pleas next considered whether the statutory fine was excessive under the Pennsylvania Constitution and the United States Constitution, holding that the fine was not excessive because the Property was in violation of the Code for 1,503 days and "[t]he fines are meant to eliminate risks caused by building violations, so it is more accurate to frame the fine amount relative to the length of time that the Property was in non-compliance[,]" rather than basing a fine assessment on the value of a property. (*Id*. at 699a.) Specifically, common pleas relied on *Commonwealth v. Church*, 522 A.2d 30 (Pa. 1987), and *Commonwealth v. Eisenberg*, 98 A.3d 1268 (Pa. 2014), where our Supreme Court opined that the primary purpose of a fine is to both punish and deter future violations and "there need not be a strict proportionality between the harm resulting from the offense and the penalty imposed." (*Id*. at 698a-99a (citing *Eisenberg*, 98 A.3d at 1268).) Common pleas reasoned that Epstein "had more than 1,503 days to correct [the Property] violations before the hearing. The fine was not too excessive because it was representative of the extended period of time in which [Epstein] failed to cure the Property violations." (*Id*. at 699a.)

6

Finally, common pleas found that it was not an abuse of discretion, particularly where, as here, it lowered the amount of the statutory fine ultimately imposed on Epstein. (*Id*. at 699a-700a.) Common pleas noted that during a bench trial, common pleas may rule on the admissibility of evidence and act as the fact-finder by affording weight to the evidence deemed admissible. (*Id*. (quoting *Commonwealth v. Safka*, 141 A.3d 1239 (Pa. 2016)).) Common pleas further noted that Epstein "never provided any evidence that the Property was not in violation of [*the Home Rule Act*]. In fact, [Epstein's] counsel admitted to violations existing when he stated, [that he expected] 'to have [the] Zoning Board process next spring . . . . [W]hen [] that process [is] finalized, it will comply the violation ultimately.'" (*Id*. at 700a (emphasis in original).) Thus, common pleas reasoned that it "did not abuse its discretion by lowering the ultimate fine amount by more than ninety-eight per cent (98%)." (*Id*.) Accordingly, common pleas denied the Post-Trial Motion. (*Id*.) Epstein timely appealed to this Court for review.

## II.    PARTIES' ARGUMENTS

### *Epstein's Arguments*

On appeal, Epstein presents the same substantive arguments asserted before common pleas. Epstein first contends that the statutory fine imposed by common pleas directly violates Section 17 of the Home Rule Act and Section 1-100 of the City's Home Rule Charter, PHILA., PA., HOME RULE CHARTER art. I, § 1-100, because both statutory schemes limit the City's authority to assess a maximum fine of $2,300 per violation, plus $400 for each additional year the violation remains uncorrected. (Epstein's Brief (Br.) at 10-14.) Epstein asserts, relying on *Cali v. City of Philadelphia*, 177 A.2d 824 (Pa. 1962), that "it is important to note that the City's

7

authority to assess fines is *only that authority which is granted by the State*[,]" and that a charter is subject to limitations and regulations imposed by the General Assembly. (*Id*. at 11 (emphasis in original).)

Epstein further asserts that the previous version of Section 1-100 of the Home Rule Charter, which "limited fines for municipal ordinances to *$300 per violation*[,]" and Section 17 of the Home Rule Act now provides, in relevant part:

> Ordinances, rules and regulations adopted under the authority of this act or under the provisions of any charter adopted or amended hereunder shall be enforceable by the imposition of fines, forfeitures and penalties, **not exceeding two thousand three hundred dollars ($2,300)**, and by imprisonment for a period not exceeding ninety days. Notwithstanding the other provisions of this section, **a city of the first class may increase any fine, forfeiture or penalty authorized under this section, provided that the increase does not exceed four hundred dollars ($400) in any calendar year and the total amount of the fine, forfeiture or penalty does not exceed two thousand dollars ($2,000).**

(*Id*. at 11-12 (quoting 53 P.S. § 13131) (emphasis in original).) According to Epstein, this statutory language "has limited the authority of the City to assess fines," and "the City[,] at its greatest authority, could seek a *maximum* fine of $2,300 for each of the violations issued against the property PLUS a $400 increase *per year of the violation*[,]" thus, amounting to "a grand total of $7,800 *only if the maximum allowable fine is imposed*." (*Id*. at 12-13 (emphasis in original).)

Epstein continues, claiming that common pleas erroneously relied on the City's argument below that, pursuant to Sections 1-109 and A-601.4 of the Code, the City could "assess a $300 or $2[,]000 fine *on each day that the violation is in existence – and each day the violation is in existence constitutes a separate violation*[,]" and "[t]his math allowed the [c]ourt below to accept the City's calculation of the fine which the [c]ourt erroneously believed could result in a

8

massive potential fine of $3,345,900." (*Id*. at 14-15 (emphasis in original).)[6] Epstein asserts that "both [common pleas] and the City justify the lower fine amount - enormous in its own right of $65,333.33 – as somehow giving a break to Epstein when viewed in context with the alleged maximum $3,345,900 fine (or the City's number of $98,000)." (*Id*. at 15.) Epstein also asserts that common pleas committed

> a material factual error, since the maximum fine at the time of the default judgment (April 2021) was only $335,800, so the amount as of November 2022 would only be somewhere around $400,000 or slightly higher (using the alleged erroneous calculations used by the [C]ity). [Common pleas] clearly was not considering a proper maximum fine amount where it arrived at the lower $65,333.33 fine, which was a material error.

(*Id.* at 22.) Epstein claims that common pleas' "mistaken belief that a maximum fine of $3,345,900 could be imposed . . . could have influenced [common pleas'] decision to levy such a massive fine of $65,333.33." (*Id.*) Thus, on this issue, Epstein claims that the "$65,333.33 fine entered by [common pleas] is clearly grossly excessive and punitive, and in conflict with State law." (*Id.* at 16.)

Next, Epstein argues that notwithstanding the purported conflict with state law, the statutory fine is nonetheless violative of both article I, section 13 of the Pennsylvania Constitution and the Eighth Amendment to the United States Constitution as excessive, confiscatory, and overly punitive. Epstein, citing a string of criminal cases from our Supreme Court and the Superior Court, asserts that "a fine will be considered excessive where it is grossly out of proportion with the severity of the crime[,]" and that common pleas was "required to consider the value of a property forfeited when determining the proportionality of the fine in relation

---

[6] We note that the potential fine total stated by Epstein differs from the fine total listed in common pleas' Final Order.

to the value of the property." (*Id*. at 16-19 (internal quotation marks omitted) (citing *Commonwealth v. 1997 Chevrolet & Contents Seized from Young*, 160 A.3d 153 (Pa. 2017); *Eisenberg*, 98 A.3d 1268; *Commonwealth v. Strunk*, 582 A.2d 1326 (Pa. Super. 1990)).) Epstein also cites to a recent United States Supreme Court decision, *Timbs v. Indiana*, 586 U.S. 146 (2019), where Epstein asserts that the Eighth Amendment is applicable to the states and applicable to forfeiture statutes dealing with criminal offenses.

Epstein further asserts that "Pennsylvania Courts are loath to permit cumulative penalties." (*Id*. at 19 (citing *Geffen v. Balt. Mkts.*, 191 A. 24 (Pa. 1937)).) Epstein claims the statutory fine is excessive and punitive because Epstein attempted to mitigate the violations by bringing the Property into compliance, Epstein "mistakenly entrusted her now estranged husband to fully handle the matter[,]" and there were no "structural violations, any unsafe violations, any fire code violations[,] . . . any landslides, water runoff[,] or any dangerous conditions." (*Id*. at 20-21.) Epstein concludes that common pleas' decision was error and requests that this Court reverse common pleas' Order and remand the matter "with instructions to enter a more reasonable fine, consistent with the City's authority in its Home Rule Charter and [the Home Rule Act]." (*Id*. at 23.)

### *The City's Arguments*

The City responds, arguing that Epstein's arguments on appeal lack merit. First, the City contends that the statutory fine was

> not so grossly disproportional to the offense as to be unconstitutional or an abuse of discretion[] [because t]he key aggravating factor supporting the fine was the risk of a landslide on this very steep property – a risk that the [] Code addresses by requiring engineering plans review before any earth moving work occurs.

10

(City's Br. at 15.)  Specifically, the City asserts that common pleas did not abuse its discretion by imposing the statutory fine because, when assessing a fine, common pleas may weigh any mitigating and aggravating factors, including "the history and character of the defendant; the nature and circumstances of the offense; the defendant's attitude or lack of remorse; and whether the penalty is below the statutory maximum."  (*Id*. at 19-20 (citing *Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994)).)

The City, citing a line of published and unpublished cases from this Court, further asserts that "[t]his Court has repeatedly upheld aggregate statutory fines for violations of the [] Code that were similar to or even larger than the approximately $65,000 [fine] at issue here."  (*Id*. at 20.)  According to the City, common pleas did not err because several aggravating factors, including the risk of a landslide, the years-long delay in correcting the violations, Epstein's failure to abide by the multiple agreements and orders, and the statutory fine was below the statutory maximum, support the imposition of the $65,333.33 fine pursuant to our decision in *Kennett Square*.  (*Id*. at 21-24.)  Likewise, the City claims that any mitigating factors asserted by Epstein, i.e., "blaming the professionals [] hired to apply for the zoning and permits; blaming [Epstein's] estranged husband (a claim . . . not raise[d] at trial); the value of the property (also not raised at trial); [Epstein's] alleged inability to pay the fine; and alleged delays in the zoning process[,]" do not warrant reversal because common pleas already reduced the statutory fine.  (*Id*. at 25.)

The City also argues that Epstein waived the issue of whether common pleas' inaccurate calculation of the potential maximum fine influenced the statutory fine ultimately imposed because this issue was not raised in the Post-Trial Motion.  (*Id*. at 32.)  However, according to the City, even if this issue was preserved, Epstein's

11

argument is based on "flawed math" and Epstein's "speculation about what 'could have' or 'might have' influenced the final fine amount has no basis in the record." (*Id*. at 33.)

The City next contends that the imposition of daily fines under the Code is fully consistent with the Home Rule Act based on recent persuasive authority and longstanding jurisprudence from this Court. The City asserts that this Court's recent decision in *City of Philadelphia v. Neely* (Pa. Cmwlth., No. 480 C.D. 2022, filed March 25, 2024), is instructive because we rejected the same argument, i.e., that the Home Rule Act and the City's Home Rule Charter cap fines at $2,300 per violation plus $400 for each year the violation remains uncorrected.[7] (*Id*. at 34-35.) Specifically, in accordance with *Neely*, the City claims that "[t]he same result is appropriate here: neither the text nor the history of the Home Rule Act prohibits the City from attacking continuing violations by defining each day as a new offense." (*Id*. at 35.) Through recounting most of the analysis conducted in *Neely*, the City further argues that the legislative history of the Home Rule Act does not evidence an intent to prohibit cumulative fines, this Court has repeatedly upheld cumulative fines, the Code's daily fine provisions have been in use for over 70 years, and Epstein's interpretation of the Home Rule Act leads to an absurd result because violators could simply continue ignoring a violation once the $2,300 threshold was reached. The City concludes that common pleas' imposition of the $65,333.33 statutory fine was not error because the City may impose daily fines (i.e., cumulative

---

[7] Pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

fines) under the Code and Home Rule Act and, in turn, requests that this Court affirm. (*Id*. at 42.)

After briefing and submission for review without oral argument, this matter is now ripe for disposition.

## III.   DISCUSSION[8]

Upon review of the record and the parties' arguments, Epstein effectively raises three claims in this appeal. First, whether cumulative or aggregate fines under the Code conflict with the Home Rule Act and the City's Home Rule Charter. Second, whether the statutory fine imposed by common pleas violates the Pennsylvania Constitution's and the United States Constitution's excessive fine prohibitions. Third, whether common pleas erred in its calculation of the maximum allowable fine prior to reducing and imposing the statutory fine on Epstein. We address each issue in turn.

### *Applicability of Cumulative Fines*

The Home Rule Act is the authoritative instrument governing the activities of first class cities in the Commonwealth and, in turn, permits first class cities to frame and adopt a charter of government. Section 1 of the Home Rule Act, 53 P.S. § 13101. "[L]ike the powers of other types of municipalities, the powers of a home rule municipality are largely constitutionally and statutorily determined." *Crawford v.*

---

[8] "Generally, our [] review in zoning cases is whether the [administrative tribunal] committed an abuse of discretion or an error of law." *Lower Southampton Township v. Dixon*, 756 A.2d 147, 150 n.7 (Pa. Cmwlth. 2000) (citation omitted). However, where there was no administrative appeal, "our [] review is whether the trial court committed an abuse of discretion or an error of law." *Id*. (citation omitted). In addition, "[w]hether a fine is excessive under our Constitution is a question of law[;] therefore[,] our standard of review is *de novo* and our scope of review is plenary." *Eisenberg*, 98 A.3d at 1279 (citation omitted).

13

*Commonwealth*, 326 A.3d 850, 858 (Pa. 2024) (quotation marks and citation omitted).

Pursuant to article IX, section 2, of the Pennsylvania Constitution, PA. CONST. art. IX, § 2, "[m]unicipalities shall have the right and power to frame and adopt home rule charters . . . . [and a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." In other words, "[t]he essential principle underlying home rule is the transfer of authority to control certain municipal affairs from the state to the local level." *Hartman v. City of Allentown*, 880 A.2d 737, 742 (Pa. Cmwlth. 2005) (citation omitted). "[S]uch grants of municipal power shall be liberally construed in favor of the municipality." *Nutter v. Dougherty*, 938 A.2d 401, 411 (Pa. 2007) (internal quotation marks and citation omitted). "Thus, in analyzing a home rule municipality's exercise of power, . . . [courts should] begin with the view that it is valid absent a limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and [courts] resolve ambiguities in favor of the municipality." *Id*. (internal quotation marks, brackets, and citation omitted).

Conforming to this constitutional mandate, Section 17 of the Home Rule Act provides:

> Subject to the limitations hereinafter prescribed, the city taking advantage of this act and framing and adopting or amending its charter thereunder shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions, including the power and authority to prescribe the elective city officers, who shall be nominated and elected only in the manner provided by, and in accordance with, the provisions of the Pennsylvania Election Code[9]

---

[9] Act of June 3, 1937, P.L. 1933, *as amended*, 25 P.S. §§ 2600-3591.

14

and its amendments, for the nomination and election of municipal officers.  The charter of any city adopted or amended in accordance with this act may provide for a form or system of municipal government and for the exercise of any and all powers relating to its municipal functions, not inconsistent with the Constitution of the United States or of this Commonwealth, to the full extent that the General Assembly may legislate in reference thereto as to cities of the first class, and with like effect, and the city may enact ordinances, rules and regulations necessary and proper for carrying into execution the foregoing powers and all other powers vested in the city by the charter it adopts or by this or any other law.  **Ordinances, rules and regulations adopted under the authority of this act or under the provisions of any charter adopted or amended hereunder shall be enforceable by the imposition of fines, forfeitures and penalties, not exceeding two thousand three hundred dollars ($2,300), and by imprisonment for a period not exceeding ninety days.  Notwithstanding the other provisions of this section, a city of the first class may increase any fine, forfeiture or penalty authorized under this section, provided that the increase does not exceed four hundred dollars ($400) in any calendar year and the total amount of the fine, forfeiture or penalty does not exceed two thousand dollars ($2,000)**.

53 P.S. § 13131 (emphasis added).  In accordance with Section 17 of the Home Rule Act, Section 1-100 of the City's Home Rule Charter provides:

Pursuant to [s]ection 1 of [a]rticle XV of the Constitution[, PA. CONST. art. XV, § 1,] and the [Home Rule] Act . . . , the City . . . shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions, including any additional powers and authority which may hereafter be granted to it.  The City shall have the power to enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable by the imposition of fines, forfeitures and penalties not exceeding three hundred dollars and by imprisonment for a period not exceeding ninety days or by such greater fines, forfeitures and penalties and periods of imprisonment as the General Assembly of the Commonwealth of Pennsylvania may from time to time authorize.

Section 1-100 of the Home Rule Charter, PHILA., PA., HOME RULE CHARTER art. I, § 1-100.

In addition, Sections 1-109(1), (3)(c) and A-601.4 of the Code provide for the assessment of separate fines for each day a violation remains uncorrected. For instance, Section 1-109 of the Code provides:

> Unless otherwise provided, the penalty for violation of any provision of the Code or any regulation adopted under it is a fine not exceeding three hundred dollars ($300) **for each offense**. Each day the violation continues is a separate offense . . . or any violation committed on January 1, 2009 or thereafter, two thousand dollars ($2,000) for each violation.

Section 1-109 of the Code, Phila., Pa., Code § 1-109(1), (3)(e) (emphasis added).[10] Likewise, Section A-601.4 of the Code states "[e]ach day that a violation continues after issuance of a notice or order shall be deemed a separate offense." Section A-601.4 of the Code, PHILA., PA., ADMINISTRATIVE CODE § A-601.4. While Epstein argues there is a conflict between the Home Rule Act and Home Rule Charter on one hand, and the Code on the other, these provisions can be read in harmony.

Initially, we note that the plain language of the Home Rule Act and Home Rule Charter does not prohibit the imposition of a fine or penalty for each offense, as defined by the Code. Moreover, although Section 17 of the Home Rule Act limits the penalty the City may impose for each individual violation (i.e., $2,300), there exists no such limitation on the City's **ability to define what constitutes a violation or offense** through ordinance. Rather, the plain language of Section 17 of the Home Rule Act and Section 1-100 of the Home Rule Charter endows the City with

---

[10] Our Supreme Court has observed that "[a] municipal ordinance is in reality a statute . . . ." *Cloverleaf Trailer Sales Co. v. Borough of Pleasant Hills, Allegheny Cnty.*, 76 A.2d 872, 875 (Pa. 1950).

16

"**complete powers of legislation and administration in relation to its municipal functions**." 53 P.S. § 13131 (emphasis added). "Under the concept of home rule, [] the locality in question may legislate concerning municipal governance without express statutory warrant for each new ordinance." *City of Philadelphia v. Schweiker*, 858 A.2d 75, 84 (Pa. Cmwlth. 2004).

The objective behind the Code's imposition of cumulative fines for each day a property remains in violation is to encourage property owners to expeditiously remedy ongoing violations. *See Woodruff v. Lower Southampton Twp.*, 516 A.2d 834, 835 (Pa. Cmwlth. 1986) (opining that "[a]ppellants always had the keys to their jail in their pocket in this case; they could have cleaned up their junkyard so as to bring it in compliance with [the] zoning ordinance"); *JPR Holdings, LLC v. City of Philadelphia* (Pa. Cmwlth., No. 820 C.D. 2019, filed Jan. 8, 2021), slip op. at 10 ("[t]he goal behind the Property Maintenance Code's daily accruing fines is to motivate property owners to work diligently to remedy ongoing violations as quickly as possible"). The reasoning behind this objective is simple, in that such ongoing violations, especially violations that pose a safety hazard, must be corrected as soon as practicable, and a property owner's failure to take corrective action quickly can result in a substantial fine liability in order to both punish the violation and deter future violations. *See Eisenberg*, 98 A.3d at 1286 ("acknowledg[ing] that all fines serve the twin purposes of punishment and deterrence"). In the absence of cumulative daily fines, a property owner could simply wait until the $2,300 fine limit accrued and never correct the violation. "It is clearly a municipal function of the City to protect its citizens' health, safety, and welfare." *Ryan v. City of Philadelphia*, 465 A.2d 1092, 1094 (Pa. Cmwlth. 1983) (citing *Silver v. Zoning Bd. of Adjust.*, 255 A.2d 506 (Pa. 1969)).

For these reasons, this Court has generally upheld cumulative or aggregate fine assessments for continuing violations of the Code that remain uncorrected for extended periods. For example, in *City of Philadelphia v. DY Properties, LLC*, 223 A.3d 717 (Pa. Cmwlth. 2019) (*DY Properties*), we affirmed a trial court order imposing a $243,200 fine, which encompassed multiple daily fines for a 75-day period where a property remained in violation of the Code. We reasoned, in part, that based on Section A-601.4 of the Code, and considering the evidence below establishing that Department "attempted numerous times to require [the appellant] to remediate its violations," it was undisputed that the appellant had violated the Code, and the trial court imposed the subject fines in accordance with the relevant Code sections. *Id.* at 724-25. Thus, we concluded that the trial court did not abuse its discretion because, "[a]lthough this Court agrees that the trial court's fine was significant, the fine was the direct result of [the appellant's] ongoing violations and failure to remediate." *Id.* at 725.

More recently, in *Neely*, we affirmed a trial court order imposing a $113,800 aggregate fine, assessed pursuant to Sections 1-109 and A-601.4 of the Code, based on the landowner's repeated and uncorrected violations over a period of 669 days. Slip op. at 8-10. We reasoned that "[t]he Code provides that each day of noncompliance is a new violation," and "the City has an interest in protecting neighbors and the public from 'recalcitrant property owners like [the landowner] who refuse to correct dangerous Code violations over a long period of time.'" *Id.*, slip op. at 8. "Based on the plain language of the Code and applicable case law, we discern[ed] no error in the trial court's imposition of cumulative fines." *Id.*; *see also City of Philadelphia v. Khan* (Pa. Cmwlth., No. 427 C.D. 2023, filed July 1, 2024), slip op. at 13 (affirming "$133,860[] aggregate fine for 1,455 days of one basic Code

18

violation and one Class III Code violation, which . . . was well within the parameters of the Code"); *JPR Holdings, LLC*, slip op. at 10-11 (upholding imposition of total fine of $52,000 where maximum authorized fine was about $800,000); *City of Philadelphia v. Joyce* (Pa. Cmwlth., No. 896 C.D. 2019, filed Dec. 4, 2020) (upholding cumulative fines assessed under the Code totaling $25,000 for violations that remained uncorrected for 1,756 days); *City of Philadelphia v. Broad & Olney Alliance, LP* (Pa. Cmwlth., No. 49 C.D. 2019, filed July 14, 2020), slip op. at 10-11, 11 n.7 (discerning "no abuse of discretion on the part of the trial court in imposing the $26,850 aggregate fine for 179 days of Class III Code violations" where total fine could have been $358,000).

Here, our dispositions in *DY Properties* and *Neely* are instructive as this case involves similar facts. The Property remained in violation of the Code for 1,503 days, and Epstein's initial fine accrued over the same period, at $300 per violation of Sections A-104.1 and B-3313.1, and $2,000 per violation of Section A-301.1.5, with each day the Property remained out of compliance representing a separate offense. (Post-Trial Motion Op. at 3-4; R.R. at 697a-98a.) Epstein also did not file an administrative appeal with Department. Instead, the Property remained noncompliant for 1,503 days and Epstein did not comply with multiple agreements between the parties and orders from common pleas directing Epstein to remediate the violations.

The subject violations, in part, pertained to unsafe conditions with the Property, specifically, the potential for a landslide as the Property is located on a steep slope, which persisted for an extended period of time despite Department's repeated notices and warnings demanding remediation, and multiple common pleas' orders directing same. In addition, the evidence proffered before common pleas

19

during the bench trial established that Department attempted on numerous occasions to compel Epstein to remediate the violations. Importantly, as credited by common pleas, Epstein's counsel admitted that the Property was not in compliance at the time of the bench trial and the violations likely would not be remediated until the following spring.[11] (Post-Trial Motion Op. at 6; R.R. at 700a.)

While we are cognizant that the statutory fine imposed by common pleas is significant, we are nevertheless constrained to affirm based on Epstein's repeated failure to take corrective action and remediate the violations of the Code for a 1,503-day period. Contrary to Epstein's arguments, the reduced statutory fine of $65,333.33 was imposed because of Epstein's repeated noncompliance in remediating potentially dangerous conditions on the Property. "[T]his Court has approved the imposition of daily fines for excessive periods of noncompliance . . . [and] [s]ubstantial fines are even more appropriate where the underlying violations created an imminent safety hazard." *City of Philadelphia v. Hammond*, 322 A.3d 971, 975 (Pa. Cmwlth. 2024) (internal quotation marks and citations omitted). Accordingly, we discern no error in common pleas' imposition of cumulative fines.

### *Excessive Fine*

"The Excessive Fines Clause [] limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Eisenberg*,

---

[11] "In a bench trial, the trial judge acts as fact-finder and has the authority to make credibility determinations and to resolve conflicts in evidence." *Merrell v. Chartiers Valley Sch. Dist.*, 51 A.3d 286, 293 (Pa. Cmwlth. 2012) (citation omitted). "Consequently, the trial judge's findings made after a bench trial must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by [substantial] evidence in the record." *Id.* (citation omitted). "Accordingly, the trial court's authority to grant or deny a post-trial motion following a bench trial 'is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished.'" *Id*. at 293-94 (quoting *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa. 1988)).

20

98 A.3d at 1281 (quoting *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998)). Both the Eighth Amendment to the United States Constitution and the Pennsylvania Constitution provide, in pertinent part, that "[e]xcessive bail shall not be required, **nor excessive fines imposed** . . . ." U.S. CONST. amend. VIII, PA. CONST. art. I, § 13 (emphasis added).[12] "A fine is excessive [under the federal and state constitutions] 'if it is grossly disproportional to the gravity of a defendant's offense.'" *DY Properties*, 223 A.3d at 723 n.12 (quoting *Bajakajian*, 524 U.S. at 334). Our Supreme Court has emphasized:

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

*Eisenberg*, 98 A.3d at 1283 (quoting *Church*, 522 A.2d at 34). "Thus, a fine must be reasonably proportionate to the crimes which occasion them." *DY Properties*, 223 A.3d at 723 n.12 (internal quotation marks and citation omitted). "However, the Pennsylvania Supreme Court and [this] Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Id.* (internal quotation marks, brackets, and citation omitted). "Moreover, a fine may be deemed unconstitutionally excessive where 'the amount . . . [is] so great as itself to be confiscatory and beyond the bounds of all reason and justice.'" *Joyce*, slip op. at 9 (quoting *Church*, 522 A.2d at 34).

---

[12] "The Eighth Amendment is made applicable to the states through the Fourteenth Amendment[, U.S. CONST. amend. XIV]." *Commonwealth v. Real Prop. & Improvements Commonly Known as 5444 Spruce St.*, 832 A.2d 396, 399 (Pa. 2003) (citing *Robinson v. California*, 370 U.S. 660, 664 (1962)). "Article I, [s]ection 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment." *Id.* (citation omitted).

21

This Court has previously considered whether large fines imposed for continuing violations of the Code were excessive under the Pennsylvania Constitution and United States Constitution, consistently holding under similar circumstances that large aggregate fines are not unconstitutionally excessive. *See DY Properties*, 223 A.3d at 723 n.12 (finding that an aggregate fine totaling $243,200 was not excessive because "[t]he violations pertained to potentially hazardous conditions on the [p]roperty which remained for approximately eight months, despite City demands to remediate"); *Khan*, slip op. 10 (holding that a $133,860 fine was "constitutional as being the result of an accumulation of multiple daily fines arising solely from the [violators'] repeated and ongoing violations of the Code"). Similarly, in the context of the federal and state constitutions excessive fine prohibitions, our Supreme Court has upheld cumulative fines resulting in large aggregate sums as not excessive under either constitutional scheme. *See Eisenberg*, 98 A.3d at 1287 n.24 (distinguishing between large one time fine for a misdemeanor and cumulative fines resulting in high aggregate fine).[13]

In *Joyce*, we upheld a cumulative fine totaling $25,000 as not unconstitutionally excessive, which was assessed for "uncontested and longstanding Code violations stemming from [the property owner's] failure to remediate dangerous conditions on the [p]roperty despite repeated notices and warnings from the City." Slip op. at 9 (citation omitted). On appeal to this Court, the property owner argued that the fine was excessive and overly punitive in violation of the

---

[13] This Court has held that the value of the noncompliant property is not a factor when imposing fines for violations of the Code. *See Neely*, slip op. at 11 ("[t]he value of the noncompliant property is not a consideration of the trial court in considering fines for violations of the Code"). Likewise, a noncompliant property owner's inability to pay a subject fine is not a factor in the imposition of a fine under the Code. *See Church*, 522 A.2d at 33 ("There is no constitutional requirement that invalidates the imposition of an otherwise valid fine merely because a defendant lacks the immediate ability to pay it [] or would have difficulty in doing so.").

22

Pennsylvania and United States Constitutions. *Id.*, slip op. at 6. Specifically, the property owner asserted, among other things, that the trial court was required to consider the value of the property in determining the proportionality of the fine and that the fine was not reasonably related to the severity of the violations. *Id.*, slip op. at 6-7. We reasoned that "the purpose of a fine is, in large part, to deter future or continued violations, such that the amount of the fine may be raised to whatever sum is necessary to achieve a deterrent effect[,]" and the subject fine "falls well within statutory parameters and represents a lenient sum in comparison to the maximum amount authorized by the Code." *Id.*, slip op. at 11 (citations omitted). Thus, we concluded "that the contested fine is not unconstitutionally excessive" under either the Pennsylvania Constitution or the United States Constitution. *Id.*, slip op. at 12.

Here, the arguments presented by Epstein are similar to those considered in *Joyce*. Epstein contends that the $65,333.33 fine imposed by common pleas is unconstitutionally excessive and, thus, violative of the excessive fine prohibitions of the Pennsylvania and United States Constitutions. Like the property owner in *Joyce*, Epstein argues, among other things, that

> the fine entered by the Court below against Epstein, $65,333.33[,] is grossly excessive and out of proportion to the wrong committed (minor clearing and grubbing work on a vacant lot and removal of trees). The fine *is also grossly out of proportion to the value of the [P]roperty which is the subject of the violations.* The [P]roperty was assessed by the city at a value of $50,700.

(Epstein's Br. at 20 (emphasis in original).) In addition, Epstein claims that "[i]f this fine is permitted, Epstein will clearly be unable to pay the fine [] and development of the Property would be impossible." (*Id.*) These arguments, however, lack merit. As this Court has repeatedly held, neither the value of the noncompliant property

23

nor the inability to pay a subject fine are factors in determining if a fine is unconstitutionally excessive. *See Church*, 522 A.2d at 33; *Neely*, slip op. at 11.

Below, common pleas considered similar arguments, determining that Epstein

> incorrectly frames the fine amount relative to the estimated value of the Property. However, a building that collapses on a bystander will have the same harrowing effects regardless of its value. The fines are meant to eliminate risks caused by building violations, so it is more accurate to frame the fine amount relative to the length of time that the Property was in non-compliance. [Epstein] had more than 1,503 days to correct its violations before the hearing. The fine was not too excessive because it was representative of the extended period of time in which [Epstein] failed to cure the Property violations.

(Post-Trial Motion Op. at 5; R.R. at 699a.) Similar to *Joyce*, the statutory fine imposed here by common pleas was the result of ongoing violations of the Code for a 1,503-day period, and the fine was imposed subject to the "statutory parameters" of the Code. *Joyce*, slip op. at 11. Moreover, common pleas significantly reduced the statutory fine to $65,333.33, representing a 98% reduction, which is a "lenient sum" in comparison to the maximum fine total of $3,345,900. (Post-Trial Motion Op. at 6; R.R. at 700a); *see also Joyce*, slip op. at 11. Thus, just as with the property owner's arguments in *Joyce*, we are not persuaded by Epstein's arguments. Accordingly, we agree with common pleas that the statutory fine is not unconstitutionally excessive under the Pennsylvania or United States Constitution and, therefore, common pleas properly imposed the $65,333.33 fine.

## IV. CONCLUSION

For the foregoing reasons, we discern no error in common pleas' imposition of a cumulative fine totaling $65,333.33, based on Epstein's violations of the Code that remained uncorrected for an extended period.[14]  Accordingly, we affirm.

**RENÉE COHN JUBELIRER,** President Judge

---

[14] We need not address Epstein's final argument regarding how common pleas calculated the potential maximum fine because this issue was not raised in the Post-Trial Motion and, therefore, is waived on appeal.  *See DY Properties*, 223 A.3d at 722 (internal quotation marks and citation omitted) ("[T]o preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions.  Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves a basic or fundamental error."); *City of Philadelphia v. Matos* (Pa. Cmwlth., No. 1391 C.D. 2018, filed Dec. 12, 2019), slip op. at 10 ("Notably, 'the purpose of post-trial motions is for the court to correct its own errors, not for parties to remedy their own mistakes.'") (quoting *Drake Mfg. Co. v. Polyflow, Inc.*, 109 A.3d 250, 263 (Pa. Super. 2015)).  However, even if this issue was preserved, and common pleas' calculation of the potential maximum fine was incorrect, Epstein was ultimately fined far less then common pleas' maximum fine calculation.  *See United States v. Electrodyne Sys. Corp.*, 147 F.3d 250, 253 (3d Cir. 1998) ("When all is said and done, the immutable fact is [the defendant] was advised its maximum fine exposure was $1,010,000, when in fact the maximum fine exposure was $1,500,000. [The d]efendant was fined $1 million, an amount below the exposure about which it was informed.  **Under this circumstance, the error must be characterized as harmless**.") (emphasis added).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
              v.                        :    No. 515 C.D. 2023
                                        :
Adva Epstein                            :
                                        :
Appeal of:  Adva Epstein               :

# **O R D E R**

**NOW**, April 2, 2025, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** President Judge